THE STATE EX REL. C. C. MILLICAN v. B. L. PHILLIPS.

(Case No. 2043.)

1. ELECTION — BALLOT — DEVICE — STATUTE CONSTRUED.— A ballot used at an election on plain white diamond-shaped paper, without any picture, sign or stamp mark, printed, engraved, stamped or otherwise placed thereon, is not invalid by reason of the diamond shape of the paper; the shape of the paper

does not constitute a "device" as that word is used in the election law of 1879.

2. ELECTIONS.—The result of an election, as shown by the tickets deposited by the legal electors, must not be set aside except for causes plainly within the purview of the law.

3. CONSTRUCTION.— The tendency of decisions is rather to restrict exceptions which exclude from count the ballot of a citizen than to extend them.

APPEAL from Brazoria. Tried below before the Hon. Wm. H. Burkhart.

The relator presented to the district attorney his affidavit setting forth the result of the election returns of Brazoria county for the office of assessor of taxes, at the election in November, 1884, and showing that the defendant B. L. Phillips received and had returned for him by the managers of election the total number of one thousand and fifteen, and relator, C. C. Millican, the total number of four hundred and fifty-eight votes, but alleged that many of the ballots cast for Phillips were of a peculiar and unusual shape, designated as "diamond shape," which tickets or ballots he averred were illegal, being in violation, because of such peculiar shape, of the act of 1879, prohibiting "devices," etc., being printed or made in any manner on election ballots; claiming that if "diamond shape" ballots were held to be "devices" within the meaning of the act of 1879, and should not be counted, that the relator would be found to have received a majority of the remaining ballots.

The district attorney then presented a petition to the district judge, which was a repetition of the affidavit, in substance, and asking leave to file an information in the nature of a *quo warranto* against Phillips, who had received the certificate of election and qualified in the office. Upon this petition the judge indorsed his *fiat* granting the leave asked.

No further pleading was filed.

Defendant Phillips excepted for the following causes, viz.:

1. To the jurisdiction of the court of the subject-matter of the controversy "in the manner and form" as the same are presented by the petition and affidavit.

2. Because upon the face of the said affidavit and petition, this cause is purely a contest of the result of an election.

3. To the jurisdiction of the court under the *quo warranto* statute of 1879, because the proceeding thereby prescribed is of a criminal character, punishing, on conviction, by fine, and is below the grade of felony.

4. To the jurisdiction of the court as derived from said statute of 1879, because the same is unconstitutional in this:

1. It is in conflict with section 10, article I, of the constitution, in that it allows the defendant only such rights upon trial as pertain to trial of civil suits, while the proceeding subjects the defendant, on conviction, to punishment by fine as well as forfeiture of franchise.

2. Because said statute conflicts with section 19, article I, of the constitution, in that under it defendant may be deprived of property and privileges (viz., his office) without allowing him due process of law in his defense.

3. It conflicts with section 35, article III, of the constitution, in that the bill contains two subjects — the first to prescribe a remedy by information in the nature of *quo warranto*, and the other subject is to confer on the district court of Travis county jurisdiction of "all *suits* against persons illegally claiming or holding any state office."

5. To the jurisdiction of the court, because, in the absence of the statute of 1879 (it being unconstitutional and void), the court has no authority to entertain this character of proceeding upon the relation of Millican, for the purpose of determining the disputed right to the office.

6. Defendant further excepted and moved to dismiss the proceeding, because no legal information was filed, but only the relator's affidavit and the district attorney's petition asking leave to file an information.

7. Defendant demurred generally to the affidavit and petition.

8. Defendant specially excepted to said affidavit and petition, because there was no averment that any elector was defrauded of his vote or prevented from voting as he desired, or that any vote cast was not counted as voted (except that one hundred votes were thrown out at precinct No. 2, which, if true, would not change the result), or any averment or pretense that the will of a majority of the electors has been defeated.

Exceptions of Phillips sustained, and the cause dismissed.

*Eugene J. Wilson* and *Hickey & Ballew*, for relator, cited: Appendix to Rev. Stat., pp. 45, 46.

*Geo. F. & E. J. Duff*, for respondent, on their proposition that the proceedings were irregular, because not conducted in the name of the state, cited: Territory *v.* Lockwood, 3 Wall., 240; Wright *v.* Allen, 2 Tex., 158; Wright *v.* People, 15 Ill., 417, and others.

That the decision of the judges of election settled the question growing out of the shape of the ballots, they cited: Acts 1881, art. 1702.

WILLIE, CHIEF JUSTICE.— The petition seeks to oust Phillips from the office of assessor of taxes of Brazoria county, because a large number of illegal votes were cast for him, and if these votes are not counted it would show a majority in favor of the relator. These votes were objected to on one ground only, and that is because they are "diamond shaped," and it is alleged that this shape was given them as a "device" in violation of the election law of 1879. *Facsimiles* of these tickets were made part of the petition, and are brought up to this court with the record.

Upon an examination of these we find that they are printed on plain white paper, without any picture, sign, device or stamp mark, printed, engraved, stamped or otherwise placed upon them. In these respects they seem to fulfil every requirement of the law. There is nothing in its provisions as to the shape, size or dimensions of the tickets to be used at an election. But it is contended that by giving them the shape the present tickets bear, a device is formed to ascertain the contents of a ballot. By the word "device," as used in the statute, was doubtless meant a figure, mark or ornament of a similar character, with the pictures, signs, etc., enumerated in the same connection, and placed upon the ticket in a like manner. This is the natural and legal construction to be placed upon the word in the connection in which it is used, and we do not feel authorized to extend its meaning in restriction of the right of a voter to cast his ballot for the candidate of his choice.

In fact the decisions tend rather to restrict the exceptions which exclude the ballot rather than to extend them; to admit the ballot if the spirit and intention of the law is not violated, although a literal construction would vitiate it. Druliner *v.* State, 29 Ind., 308; Stanley *v.* Manly, 35 Ind., 275; Kirk *v.* Rhoads, 46 Cal., 398.

It is contended, however, that as these provisions are enacted for the purpose of preserving the secrecy of the ballot and the independence of the voter, this object will be defeated if such tickets as the one before us are allowed to be placed in the ballot-box and to be counted in determining the result of the election. If this were the case we should not feel justified in extending the provisions of the statute beyond the legal import of its terms. The will of the people as expressed at the ballot-box must be respected by all tribunals having supervision or jurisdiction over the subject-matter of elections. The result, as shown by the tickets deposited by the legal electors, must not be set aside except for causes plainly within the purview of the law. It was doubtless the conclusion of the legislature that, if tickets were allowed to be printed upon colored paper,

or if marks, pictures or stamps were placed upon them, it would be within the power of persons other than the voter to ascertain the nature of his vote when offered to the managers, and, as a consequence, to exert an improper control over the voter, or punish him for the manner in which he had exercised the right of suffrage. If they had supposed that the same evil result would follow from allowing tickets to be made in different shapes, they doubtless would have prescribed the form of the paper on which they should be written or printed. It might happen that a political party, by having its tickets of a certain weight or thickness, could tell the name of every voter who had supported the nominees of the party. Still, if the paper was not colored, and had no distinguishing mark placed upon it, these particular votes could not be rejected. The law does not prescribe that the tickets shall be square or oblong or round, or in any other shape known to geometry, and those we are considering, being somewhat in the shape of a rhomboid, were not illegal. From an examination of these tickets it is evident also that the spirit and intention of the law is not violated by the use of them. They are easily folded in such a manner as to render it impossible for the closest observer to tell of what shape the paper on which they are printed is when spread out to its full size. We cannot see from an inspection of them that the secrecy of the ballot or the independence of the voter will be interfered with by allowing such tickets to be counted.

There is absolutely no ground for setting aside the election stated in the information, and the judgment of the court below dismissing it is affirmed.

AFFIRMED.

[Opinion delivered February 24, 1885.]