SHIELDS, *Appellant*, v. McGREGOR.

1. **Election Ballots**: CAPTION: REVISED STATUTES, SECTION 5493. The purpose of section 5493, Revised Statutes, in prescribing what ballots used at elections shall contain, is to prohibit the use of a caption calculated to induce the elector to conclude from an inspection of the caption or headlines only, that the persons thereunder named are of his political persuasion, when they or any of them are not.

2. ——: ——: ——. Headlines to the ballot are not prohibited but are permitted; when used, however, they must tell the truth.

3. ——: FRAUDULENT BALLOTS: STATUTE. The statute fixes an absolute rule of evidence, and declares the prohibited ballots fraudulent, without regard to the fact whether they did in reality deceive the elector or not.

4. ——: ——: EVIDENCE. When it is necessary to determine from evidence, whether the political character of the persons whose names are in the body of the ballots is, or is not, truly indicated by the caption, the court cannot, as a matter of law, declare such ballots void on their faces.

5. ——: STATUTE: "POLITICAL CHARACTER."—The words, "political character," as used in the statute (R. S., sec. 5493), apply as well to independent candidates as they do to those who are the nominees of regular party organizations.

6. **Election Ballots**: HEADLINES. A ballot headed, "Democratic State, Congressional and Senatorial, and Independent Judicial and County Ticket," the headlines for the words, "Democratic," and

"Independent," being both in bold type, and each making a sep_ arate line, held to sufficiently indicate the political character of the persons on the ticket, and, therefore, not to be fraudulent within the meaning of the statute.

7. ———: ———. Similar ballots with the exception of the words, "Greenback Labor," in place of "Democratic," likewise held valid.

8. ———: ———: EXPERT EVIDENCE. The issue being whether the persons whose names appeared on the ballots as candidates for circuit judge and county officers were independent candidates, expert evidence to show that the captions were designed to mislead was rightly rejected. If they were independent candidates, the caption truly expressed their political standing before the electors.

9. **Election Contest:** COUNTING BALLOTS. Where, in an election contest, the ballots objected to are not illegal, it is unnecessary for the court to make an order to have them counted.

*Appeal from Vernon Circuit Court.*—HON. C. G. BURTON, Judge.

AFFIRMED.

*George Hubbert* for appellant.

(1) A cause cannot be tried and adjudicated upon its merits until the evidence is taken upon the whole case. *Lewis v. Schwenn*, 2 S. W. Rep. 392. (2) A false statement in the caption of a ballot, as to the political character of a candidate named thereunder for an office, vitiates the ballot, and it should not be counted. R. S., sec. 5493. (3) In arriving at a conclusion, as to whether a ballot is designed to mislead any voter, the surrounding circumstances, and the customs of political parties and voters, opinions of competent persons, and actual results may be considered. Abbot's Tr. Evid., 751; Roger's Exp. Tes. (4) A ballot so headed as to impress the eye of an ordinary voter, upon casual inspection or examination, that it is of a certain political character, cannot have printed under it the name of a particular candidate of different politics. Such ballot is

fraudulent, although a careful scrutiny or careful reading might disclose the true character of the particular candidate. (5) A judge before whom a cause is pending should afford a petitioner lawful and "certain remedy" for every injury, and administer justice, "without sale, denial, or delay," and employ all incidental power to that end. (6) The proper course upon the evidence adduced in this case is to remand it with instructions to the judge below to ascertain the number of the fraudulent ballots objected to in Newton and McDonald counties, and if sufficient to change the result, enter judgment for contestant. (7) If we leave out of view the prominence of the top lines of the tickets complained of, and read the caption as experts, in view of the usage in McDonald and Newton counties, still they are confusing and misleading, and false as to the political character of the names thereunder upon the evidence in the case. According to such usage there was but one division of the tickets to be voted; that was into state and county offices. The candidates who were intended to serve in, or for, a single county, were designated as the "county ticket." Those who were intended to represent or serve for a large area of territory were designated, generally, as the "state ticket." According to this classification, circuit judge was invariably classed as a state officer, and very properly, for the election returns go to the secretary of state; the final canvass of the returns is by state officers; his commission issues from the governor, etc. Then take the ticket beginning, "Greenback-Labor" or "Democratic," and construe it in the most favorable light for the contestee, and what does it assert of the candidates for state officers? Why, that they are "Democratic" or "Greenback-Labor" candidates. Contestee set up in his answer that he professed to run only as an "Independent," and he so testified before the commissioner. His acts show he was a Republican, in fact, and was supported as such by his

party. Have it as we may, he cannot be regarded as either Democrat or Greenback-Labor. Then when those tickets assert of him that he, a candidate for the state office, was "Greenback–Labor," or "Democratic," candidate, they assert a falsehood, are calculated to deceive, designed to mislead, and "must go." But, it is said, the word, "Independent," saves them. What impression would that next most prominent word make on the voter's mind? That is the first question; and that question is not without an answer here, from intelligent witnesses who may be pronounced experts. The only answer is, that every voter would, at the first view of the word, independent, apply it and limit it to the Independent "county ticket." Judge McCrary in his work upon Elections ("S" 387), quoting from *Reed v. Kneass*, 2 Pars. 584, says: "The true policy, to maintain and perpetuate the vote by ballot, is found in jealously guarding its purity, in placing no finely-drawn metaphysical obstructions in the way of testing election returns (we would say ballots) charged as false and fraudulent, and in assuring to the people by a jealous, vigilant, and determined investigation of election frauds, that there is a saving spirit in the public tribunals charged with such investigations, ready to do them justice if their suffrages have been tampered with by fraud. The use of such ballots in the interest of any person striving to get into office through repression of the facts touching his true political character and affiliations, and his contributions to campaign funds, can be justified only upon the principle upon which Vattel justifies "*falsil oquium*."

*E. O. Brown, J. W. Jenkins* and *Harding & Buller* for respondent.

(1) This proceeding was improperly commenced before the judge. The statute does not confer juris-

diction upon the judge to hear this case except in vacation of court. The circuit court of Vernon county was in session when the petition. was presented, and on every day thereafter, when any proceedings were had in the cause. Facts conferring jurisdiction must affirmatively appear. R. S., secs. 5550, 5551, 5554, 5555. And want of jurisdiction can be taken advantage of at any time. *Henderson v. Henderson*, 55 Mo. 499; *Graves v. McHugh*, 58 Mo. 499; *Boone v. Shackleford*, 66 Mo. 493; *Dodson v. Scroggs*, 47 Mo. 285. (2) This court will not go to the transcript to ascertain the character of the ballots contained in it, where not even the substance of such ballots are furnished in the abstract of the record. This is no compliance with rule fifteen of this court. *Haussman v. Hope*, 20 Mo. App. 193; *Coy v. Robinson*, 20 Mo. App. 462; *Hyatt v. Wolfe*, 22 Mo. App. 191. (3) Presumptions are all in favor of validity of ballots. *Cattell v. Lowry*, 45 Iowa, 78; *Jones v. Caldwell*, 21 Kas. 186. (4) The form and style of ballot prescribed by section 5493, of Revised Statutes, is not intended to prevent the free exercise of the right of suffrage, and many of the provisions of that section are held directory. Const. Mo., art. 2, sec. 9; R. S., sec. 5493; *Kirt v. Rhoads*, 46 Cal. 398; *Hodge v. Lane*, 100 Ill. 397. (5) None of the ballots complained of in points one, two, and three, of appellant's petition, are fraudulent. The captions and headlines truthfully express the "political character" of the ballots, and are "not designed to mislead the voters as to any name or names thereunder," and the ballots are "plainly printed." *Turner v. Drake*, 71 Mo. 285; *Roller v. Truesdale*, 26 Ohio St. 586; *Applegate v. Eagan*, 74 Mo. 263. (6) "Political character" does not mean that the ballot must be the ticket regularly put forward by one or the other political parties; but means public character, and that the caption shall indicate the measures of general public policy favored by the

candidates. Webster's Unabridged; *Roller v. Truesdale, supra.* (7) Tickets composed of candidates of different political parties may be printed and voted, or they may be composed partly of "independent" candidates. *Turner v. Drake, supra; Roller v. Truesdale, supra.* (8) There is no new charge set up in the fourth point of appellant's petition. The contestant must state facts which he will prove in support of the charge, and this ·point can only be held to refer to the three points before relied on as a general allegation of what has been charged before in the other points. R. S., secs. 5550, 3511; *Smith v. Sims,* 77 Mo. 269; *Waldhier v. Railroad,* 71 Mo. 515. (9) Point four, as a distinct cause of contest, does not state facts sufficient to constitute a cause of action, and pleads a conclusion of law. *Smith v. Sims, supra; Waldhier v. Railroad, supra; Buffington v. Railroad,* 64 Mo. 246; Bliss on Code Pleadings, secs. 210, 211; *Curran v. Downs,* 3 Mo. App. 470. (10) Alleging that "errors and mistakes" were made by judges and clerks in counting ballots, without specifying the "errors," would at least be held to refer to errors in counting three hundred fraudulent ballots, as alleged in first point as cast for respondent, sixty-seven as alleged in second point, and three hundred as alleged in third point, leaving only seven "errors and mistakes" not mentioned in those points. *Waldhier v. Railroad,* 71 Mo. 515. (11) The replication cannot set up a new and independent ground of contest, as a "supplemental petition," and no such pleading is known to our code; besides, the thirty-eight votes therein alleged would not change the result. R. S., sec. 3524; *Baker v. Long,* 17 Kas. 341. (12) After the admissions of the parties, the issues were fully covered by the order to the commissioner. The testimony excluded by the commissioner and the judge, in regard to the customs of voters and printers in McDonald

and Newton counties, and form of ballots in former years—and that ballots were used to deceive—was properly excluded. Design must appear from the form and language of the caption, considered as to whether "plainly printed" and whether candidates' names are those indicated in the caption. R. S., sec. 5493 ; *Roller v. Truesdale*, 26 Ohio St. 586. This is not a case for the opinion of witnesses. Opinions of experts alone are admissible. *Gavish v. Railroad*, 49 Mo. 276 ; *Wagner v. Jacoby*, 26 Mo. 531 ; *Knoll v. State*, 55 Wis. 249 ; *Newmark v. Insurance Co.*, 20 Mo. 165. (13) The only issue of fact remaining to be determined from the evidence, after the admission of the parties, was, was the respondent an independent candidate ? The trial court found that he was. The evidence shows that, while an independent, he was endorsed by the republican judicial committee. Yet, in McDonald county, he was endorsed by the independent convention, as an independent candidate. On that state of facts, the judge held ballots were not fraudulent and the counting of them was useless and unnecessary, and courts never do useless things. (14) The question as to whether the words in the caption of the ballots complained of as fraudulent, truly indicated its political character, was one of fact, to be determined by the evidence, and as the judge to whom this question was submitted, after hearing all the evidence, found, as a fact, that the caption to the ballots in question was not, in any manner, designed to mislead the voters, and, in fact, did not mislead them, his finding is conclusive. *Turner v. Drake*, 71 Mo. 285. (15) The appellant has abandoned the charge that the ballot headed "republican state, congressional, and senatorial, and independent judicial and county ticket," was fraudulent, and with no more propriety can it be claimed that the ticket headed " greenback-labor state, congressional, and senatorial, and independent judicial and county ticket"

is fraudulent, as that ticket contained the names of all the "greenback-labor" candidates; that party having no candidate for circuit judge, nor any county ticket, and hence, by no possibility, could the caption be designed to deceive. (16) This contest having been carried on before Judge Burton, not sitting as a court, there is no provision for ordering an inspection of the ballots, by the county clerk of McDonald county. The act of 1883 provides that "any court before which any contested election may be pending, or the clerk of such court, in vacation, may issue a writ to the county clerk, commanding him to open, count, and compare ballots, and certify result," etc., thereby expressly precluding the judge from making such order, and conferring that authority alone on the court, or clerk, in vacation. Acts of 1883, p. 91.

BLACK, J.—Mr. Shields, who is the plaintiff or contestor and the appellant here, and Mr. McGregor, were the candidates, and the only candidates, for judge of the fifteenth judicial circuit, at the general election held on the second of November, 1886. The circuit is composed of the counties of Lawrence, Newton, Jasper, and McDonald. In the entire circuit the defendant received, and there were counted for him, sixty-eight more votes than were cast or counted for the plaintiff. Mr. Shields contested the election, and this is an appeal from a judgment adverse to him.

The main controversy in the case arises from the circulation and use at the election, in McDonald county, of printed tickets upon which the contestee's name appeared, and which tickets, it is alleged, bore captions or headlines designed to, and which did, it is said, mislead the voters as to the names thereunder, and were, therefore, fraudulent, and should not have been counted. The facts, as they appear from the admissions of the parties, and the evidence reported by the commissioner, are as follows : " The contestor was the regular and only

nominee of the democratic party for circuit judge. That party made its nominations in all of the counties for all of the offices voted for at the election, and the name of the contestor appeared upon all of the tickets which were authorized to be printed by the party organization. These tickets in McDonald and the other counties were simply headed "Democratic Ticket." The contestee is a republican in his political proclivities. It appears that the judicial executive committee of the republican party, at a meeting held on the seventh of September, 1886, resolved that it was not advisable to call a convention to nominate a circuit judge, but the committee, in the same resolution, endorsed the candidacy of the contestee, who had announced himself as an independent candidate, and authorized his name to be printed on the party tickets, which was done in all of the counties.

In McDonald county, the republican party and the greenback-labor party made their nominations for state, congressional, and senatorial offices, but made no nominations for persons to be voted for for the various county offices. Candidates for the county offices were, in that county, put before the electors by a mass convention composed of persons previously identified with the different political parties. The persons thus nominated were known and called the "Independent County Ticket." This mass convention, it seems, also endorsed the candidacy of the contestee.

It is admitted that there were circulated and voted tickets which bore a caption in form and in type as follows :

"DEMOCRATIC
" State, Congressional and Senatorial,
" and
"INDEPENDENT
" Judicial and County Ticket."

Under this caption were printed first the names of the

democratic candidates for judge of the Supreme Court, railroad commissioner, superintendent of public schools, and state senator. Then followed the name of the contestee as a candidate for circuit judge and the names of the candidates for the county offices, who had been put in nomination by the mass convention, and were known as the "Independent Ticket." It also appears that tickets were circulated and voted having the following caption: "Greenback-Labor, State, Congressional and Senatorial, and Independent Judicial and County Ticket," in form and type the same as the preceding one. The candidates upon this ticket were those nominated by that party for state, congressional, and senatorial offices, and then followed the name of the contestee, and the name of the persons composing the "Independent County Ticket."

The contestor states that the contestee received, and there were counted for him, three hundred of the first of these ballots, and sixty-seven of the second. The proof shows that a number of each kind were voted and counted, and the allegation as to the number will be taken as true. These are the ballots alleged to be fraudulent, because designed to mislead the voters. It may be stated, as a part of the history of the election, that the republican tickets had a like caption, save the word, "Republican," was used as the first word of the caption. The candidates for circuit judge and county officers are the same as on the two tickets just described. These three tickets and the ticket headed, "Democratic Ticket," were the only printed ballots used at the election.

Section 5493, Revised Statutes, 1879, after stating that the ballot shall be a piece of white paper, on which shall be written or printed the names of the persons voted for, provides: "Said ballot shall not bear upon it any device, whatever, nor shall there be any writing or printing thereon, except the names of persons, and the desig-

nation of the offices to be filled, leaving a margin on either side of the printed matter for substituting names. Each ballot may bear a plain written or printed caption thereon, expressing its political character, but on all such ballots the caption or headlines shall not, in any manner, be designed to mislead the voter as to the name or names thereunder. Any ballot, not conforming to the provisions of this chapter, shall be considered fraudulent, and the same shall not be counted."

This statute was passed in view of the well-known fact that ballots are, in general, previously printed and circulated on election day, by committees, or persons, appointed by the respective political parties, or by those who advocate the election of certain persons. The evident purpose of the law is to prohibit the use of a caption calculated to induce the elector to conclude, from an inspection of the caption, or headlines only, that the persons thereunder named are of his political persuasion, when they, or any of them, are not. The 'caption is not limited to one word, nor to three words, as in former years. Headlines are not prohibited by the law, but are permitted ; when used, however, they must tell the truth. The law is stringent, fixes an absolute rule of evidence, and declares the prohibited ballots fraudulent, without regard to the fact whether they did in reality deceive the elector or not. But great care must be taken lest we step beyond the true intent of the law. It is clear also that we cannot, as a matter of law, declare the ballots here in question fraudulent on their face. It is necessary to first determine by evidence whether the political character of the persons whose names are in the body of the ballots is, or is not, truly indicated by the caption. *Turner v. Drake*, 71 Mo. 287. The words, "political character," as here used and as used in the statute apply as well to independent candidates as they do to those who are the nominees of regular party organizations.

1. Now we may apply these general observations to the exact case in hand. The first words of the caption are "democratic state, congressional, and senatorial." That the candidates appearing upon the ballots for these offices were all democrats is conceded, and thus far there can be no objection to the ballots. We then have "an independent judicial and county ticket." These words truly and accurately express the political character of the remainder of the candidates on the ballots. Nor can it be fairly said there is anything misleading in the form of the headlines, for the words, "democratic" and "independent," are both in bold type and each makes a separate line. We think the headlines to these ballots clearly and truthfully indicate the political character of every name below them. To hold otherwise is to say that the elector had the right to read the word, "democratic," and then shut his eyes as to the residue of the caption, and that, too, when the law does not limit it to one or any number of words. The independent candidates, including the contestee, held their attitude before the public. That was as well known and defined as was that of the candidates of the other political organization. When it is remembered that this independent movement was composed in part of persons affiliating with the democratic party, we think there is no foundation for the complaint made by the contestor. What has been said applies with equal force to the ballot headed "greenback-labor," etc.

2. The commissioner properly excluded the expert evidence offered to show that the captions were designed to mislead. The issue of fact was, whether these persons, whose names appeared as candidates for circuit judge and county officers, were independent candidates. If they were, then the caption truly expressed their political standing before the electors. Nor can the fact that the previous custom in McDonald

county was for each party to print its tickets with the party name, only, as a caption, change the conclusion before expressed. These tickets seem to have been prepared by persons affiliating with all parties, to meet the changed state of affairs, by reason of the independent movement, as to the county and circuit judge candidates, and if it be true, as we hold, that the headlines were not designed to mislead, then the former customs, under different circumstances, can have no bearing upon the case.

3. It appears that the county clerk of McDonald county refused to open and produce the ballots to be counted, unless he had an express order so to do from the court or judge. Upon the incoming of the commissioner's report, the contestor asked for the proper orders, and a new commission, all of which was refused. The form of the ballots, and many other facts, having been admitted, and the evidence as to the political standing of the various candidates being before the judge, he declined to order a counting of the ballots, unless it should appear that they were illegal, and, being of the opinion that the ballots complained of were not fraudulent, ruled as first stated, and we see no error in this. The counting of the ballots, under such circumstances, would have been wholly useless.

4. In the fourth subdivision of the petition, it is stated that contestee received only one hundred and ten legal votes in McDonald county, notwithstanding which there were counted for him seven hundred and eighty-four votes. This allegation is accompanied with no statement of facts or particular charges. The law provides that the petition should set forth "the point on which he (the contestor) will contest the same (the election), and the facts which he will prove in support of such points, and shall pray for leave to produce his proof." In view of this statute, we can

only regard this general statement as having reference to the preceding specifications, and to relate alone to the votes alleged to be fraudulent, because of the head-lines upon the tickets. There could, then, be no use of a further reference, because of anything stated in the fourth subdivision of the petition.

5. The supplemental petition states that the contestee received thirty-eight fraudulent ballots, in Newton county; that they were fraudulent because his name appeared on that number of ballots headed "national state ticket." Full admissions were not made as to this charge, nor were the proofs taken because of a refusal of the clerk of that county to produce the ballots, until specially directed so to do by the court or judge. But, conceding these ballots, thirty-eight in number, to have been fraudulent, for the reason assigned, the result of the election would not be changed, and this cause ought not to be re-manded for further proof on that charge.

We see no reason for interfering with the judgment in this case, and it is, therefore, affirmed. Sherwood, J., did not participate in the consideration of this case; the other judges concur.