THE STATE OF FLORIDA EX REL. JOHN C. LAW, PLAINTIFF, vs. FRANK E. SAXON, DEFENDANT. QUO WARRANTO.

1. Statutes tending to limit the citizen in the exercise of the elective franchise are always construed liberally in his favor, and in restriction of the exceptions which exclude a ballot, rather than in extension of such exceptions; and so that a voter will not be deprived of his vote, or the public will, as expressed through the ballot box, defeated, except for causes which are plainly within the purview or clear expression of the law, or upon a plain and unambiguous provision of law.

2. Where a statute provides that a ballot shall be of plain white paper; clear and even cut, without ornaments, designation, mutilation, symbol or mark of any kind whatsoever, except the name or names of the person or persons voted for, and the office to which such person or persons are intended to be chosen, the word "designation" is, on account of its associate words, to be construed to intend only designations in the nature of ornaments, mutilations, symbols or marks, as distinguished from words or writings, and hence ballots having on

them in the body thereof, the words "National Republican Ticket," and "Free Suffrage Ticket." are not illegal. or contrary to the purpose of the statute.

This is a case of original jurisdiction.

The facts are stated in the opinion of the court.

*William B. Lamar. Attorney-General*, *Wall & Wall* and *Shackleford & Palmer* for Plaintiff.

*R. W. Williams* and *T. P. Lloyd* for Defendant.

RANEY, C. J.:

Referring to the defendant's answer as amended, it appears that he claims to have received three hundred and three votes, and that the relator received two hundred and ninety-seven, although the original official canvass returned the vote as two hundred and ninety for defendant, and two hundred and ninety-seven for relator.

The point to be decided is that of the legality or illegality of at least nine, if not eleven, ballots which were thrown out by the inspectors at precinct 5 in their canvass. The objection to the ballots is that they have on their face, or the side on which are the names of the persons and offices, the words: "National Republican Ticket," and "Free Suffrage Ticket," the former intervening the words: "For Electors of President and Vice-President," (the initial words of the ticket) and the names of the candidates for these

offices; and the letter or words, "Free Suffrage Ticket" being about the middle of the ballot and intervening the names of the candidates for Justices of the Supreme Court and the words: "For Senator-from the ninth Senatorial District, A. S. Mann." The offices preceding the expression "Free Suffrage Ticket," are Electors of President and Vice-President, Representative in the 51st Congress and State officers, whereas, those following it are Senator from the district indicated and member of the House of Representatives from the county, and the county officers.

The objection to these ballots is based upon the twenty-third section of the General Election Law of June 7th, 1887, Chapter 3704 of the statutes, which section is as follows: The voting shall be by ballot, which ballot shall be plain white paper, clear and even cut, without ornaments, designation, mutilation, symbol or mark of any kind whatsoever, except the name or names of the person or persons voted for and the office to which such person or persons are intended to be chosen, which name or names and office or offices shall be written or printed, or partly written and partly printed thereon in black ink, or with black pencil, and such ballot shall be so folded as to conceal the name or names thereon, and, so folded, shall be deposited in a box to be constructed, kept and disposed of as hereinafter provided, and no ballot of any other description found in any election box shall be counted.

A consideration of adjudications in other states on statutes of the same general character, and of other authorities, will aid us in reaching a correct understanding of the statute of 1887, and in solving the question as to whether or not the ballots in controversy fall under its condemnation.

In Commonwealth vs. Weelper *et al.*, 3 Serg. & R., 29, a by-law of a Lutheran Congregation, incorporated, provided that if ": besides the names there are other things upon the tickets," they should not be counted, and tickets cast in favor of certain persons for vestrymen had an engraving of an eagle on them; and they were held to be illegal, the reason given by one of the judges being that the eagle might be seen by the inspectors even when the ballot was folded, and that it deprived voters who did not vote such tickets, of the secrecy which the ballot was intended to secure.

The provision of an Indiana act of 1867 is that all ballots shall be "written or printed on plain white paper, without any distinguishing marks or other embellishments thereon except the name of the candidates and the office for which they are voted, and inspectors of election shall refuse all ballots offered of any other description; provided that nothing herein shall disqualify the voter from writing his name on the back thereof." In Druliner vs. State, 29 Ind., 308, ninety-eight ballots were cast for Weaver, and forty-six for Druliner, and they were all printed on plain white paper; and with the exception that the words, "City Union Ticket," were printed on the face or inside of those cast for Weaver, there was nothing

printed or written on any of them except the names of the candidates and the offices. It was held that the act was intended to protect the elector from undue influence and control by others and to secure to him entire freedom of opinion in the exercise of the elective franchise, by enabling him to cast his vote in such a manner as would prevent others who from their peculiar relations to him might by intimidation or otherwise seek to control his vote, from being able to determine from the color of his ticket or some distinguishing mark thereon, the party or person for whom he voted; and that this purpose would seem to be secured, *as far as legislative enactment could effect it* by requiring all ballots cast to be uniform in external appearance, and that therefore the act could not be construed to prohibit a distinguishing mark on the inside of the ballot. This conclusion was aided, as appears in the reasoning of the court, by the fact that the act did not (particularly when considered in connection with statutory provisions requiring that ballots when presented should be put "unopened" into the ballot box and not be opened or marked by the inspectors by "folding or otherwise,"), authorize the inspectors and judges to reject a ballot upon the discovery of such a mark or embellishment at the time of counting out the ballots as could not be seen by the inspector at the time the ballot was voted. The same conclusion was reached in Stanley vs. Manley, 35 Ind., 275, and Millholland vs. Bryant, 39 Ind., 363, where the words "Republican Ticket," or "Republican County Ticket," or "Republican Township

Ticket." were printed at the head and on the inside of the ballot. In State *ex rel.* Julian vs. Adams, 65 Ind., 393, the information showed that the relator received 12,851 votes, and the defendant 12,899, and that the ballots cast for relator were headed on the inside "Democratic Ticket," and "National Ticket," and those voted for defendant, "Republican Ticket," and that five thousand of those cast, received and counted for defendant were printed in such a manner that the words "Republican Ticket," could be seen on the outside, and were seen by the inspectors, but that such was not the case as to the ballots cast for relator. The conclusion and reasoning of the court is embodied in the following language: "To push the meaning of the statute to the extreme of holding that the inspectors of elections shall refuse to receive ballots because the printing upon the inside, which is not unlawful, can be seen on the outside through the paper, we think would be a most unwarrantable construction of its language. The irregularity or malconduct in the inspectors in receiving such ballots cannot affect the case if the votes cast thereby are otherwise legal, for it is enacted that 'no irregularity or malconduct of any member or officer of a board of judges or canvassers shall set aside the election of any person unless such irregularity or malconduct was such as to cause the contestee to be declared elected, when he had not received the highest number of legal votes.'" citing Dobyns vs. Weaden, 50 Ind., 293; Allen vs.

Crow, 48 Ind., 301; Hadley vs. Gutridge, 58 Ind., 302. In State *ex rel.* Heiney vs. Wasson, 99 Ind., 261, the decision was that the requirement as to plain white paper prescribes no grade, quality or thickness of paper, nor absolute uniformity. The object of the statute, says the opinion, was undoubtedly to secure the privacy of the ballot, but if a voter uses a ballot which comes within the letter of the statute, his vote is not to be rejected because the quality or grade of the paper upon which it is printed differs from that of others which also comes within the letter of the statute, even though the difference be so perceptible as to partially destroy the privacy of the ballot.

In California the statute (Sec. 1191 of the Political Code) provided that no ticket should be used at any election or circulated on the day of the election unless written or printed on paper furnished by the Secretary of State, or on paper in every respect like such paper; and is four inches in width and twelve inches in length, or within an eighth of an inch of such size; and, if printed, unless the names are in black ink and in long primer capitals, the name of the office in small capitals and of the person in large capitals, and both without spaces, except between the different words or initials in each line, and with specified margins; and, if printed, the lines are straight and the matter single leaded; and, if written, no sign appears when the paper is folded; and unless it is free from every mark, character or device or thing that would enable any person to distinguish it by the back, or,

when folded, from any other legal ticket or ballot. And Section 1207 enacts that when a ballot found in any ballot box bears upon it any impression, device, color, or thing, or is folded in any manner intended to designate or impart knowledge of the person who voted such ballot, it must with all its contents be rejected; and, Section 1208, that when a ballot found in any ballot box does not conform to the requirements of Section 1191 it must with all its contents be rejected. In Kirk vs. Rhoads, 46 Cal., 399, ballots were objected to because they were not printed in long primer capitals and the lines were double leaded, and the conclusion of the court was that they should be counted; and the view expressed in the opinion is that a ballot should not be rejected simply because it differs from regulations prescribed in the code over which the elector had no control, such as its size, the kind of paper on which it is printed, or the character of the type or leading used in printing; that it was clear from the testimony that none but an expert with his dividers in his hands could possibly tell whether or not a given ticket complied with the requirements of the law; and to reject such tickets cast in good faith by a qualified elector would be to destroy, instead of protect, the freedom and purity of elections; that to defeat the will of the people in any election it would only be necessary to furnish the electors or a portion of them with tickets in which the printed lines were one-sixty-fourth part of an inch—the difference in space occupied by double and single leaded lines—further apart than is required by the code. There are, however, says the

opinion, other requirements of the code within the power of the elector to control, and these, if wilfully disregarded, should cause his ballot to be rejected; he can see for instance, that his ballot is "free from every mark, character, device, or thing that would enable any one to distinguish it by the back," and if in wilful disregard of law he places a name, number or other mark on it, he cannot complain if his ballot is rejected and he loses his vote. In Wyman vs. Lemon, 51 Cal., 273, it was held that if an elector uses ink to scratch names from his ballot, and by that means the ballot becomes discolored, such discoloration is not a mark designed to distinguish the ballot from other legal ballots, and will not authorize its rejection. In Coffey vs. Edmonds, 58 Cal., 521, a ballot had the words: "For President, Hancock and English," written in pencil upon its face under the words at the top of the names, Eleventh Senatorial District. It had also on its face: "For Judge of the Superior Court, M. A. Edmonds," and was counted for Edmonds, the candidate of the Republican party, and it was held that the words, "For President—Hancock and English," written on the ballot did not vitiate it, and that it had no "mark or thing thereon by or from which it could be ascertained what persons or what class of persons used or voted it," Section 1197 Pol. Code. In Reynolds vs. Snow, 67 Cal., 497, it was, however, decided that a ballot only eight inches and a half in length was properly rejected.

In Texas a statute of 1879 enacted that all ballots shall be written or printed on plain white paper, "with-

The State of Florida ex rel. v. Frank E. Saxon.—Opinion of Court.

out any picture, sign, vignette, device or stamp mark, except the name of the political party whose candidates are on the ticket; provided, such ballots may be written or printed on plain white foolscap, legalcap, or letter paper; provided, that all ballots containing the name of any candidate pasted over the name of any other candidate shall not be counted for such candidate whose name is so pasted, and any ticket not in conformity with the above shall not be counted in counting the votes, and no ticket not numbered as provided shall be counted."

This statute has been before the Supreme Court of that state several times. In State ex rel. Mellican vs. Phillips, 63 Texas, 390, ballots sufficient in number to control the result of the election were objected to as illegal on account of their being "diamond shaped." This was urged to be a "device," within the meaning of the act, but it was held that the word "device," as used, meant a figure, mark or ornament of a similar character with the "pictures, signs," etc., enumerated in the same connection and placed upon the ticket in a like manner; that the decisions tend rather to restrict the exceptions which exclude a ballot than to extend them, and to admit the ballot if the spirit and intention of the law is not violated, although a literal construction would vitiate it; citing Drulinger vs. State, 29, Ind., 308; Stanley vs. Manley, 35 Ind., 275, and Kirk vs. Rhoads, 46 Cal., 398. In reply to the argument that the purpose of the statute was to preserve the secrecy of the ballot and the independence of the

voter, and that this would be defeated by such ballots as those in question, it is observed: "If this were the case we should not feel justified in extending the provisions of the statute beyond the legal import of its terms. * * The result as shown by the tickets deposited by legal electors must not be set aside except for causes plainly within the purview of the law." It is further observed in substance that if the law-making power had supposed the same evil results as to destroying the secrecy and independence of the ballot, would follow from allowing tickets to be made in different shapes, as from color, and other prohibited features, it doubtless would have prescribed the form of tickets. The tickets are said to be somewhat in the shape of a rhomboid, and not only are they not illegal from being of this shape, as the statute does not prescribe any shape, but they are easily folded in such a manner as to render it impossible for the closest observer to tell of what shape the paper is when spread out to its full size, and the spirit and intention of the law are not violated by their use, or the secrecy of the ballot, or independence of the voter interfered with by their use. In Owens vs. State, 64 Texas, 500, ballots were objected to because headed *Election Ticket*, and others because the names of the candidates for President and Vice-President, and the counties where the presidential electors resided were printed on them. The ballots were declared legal, the court holding the statute to have been intended to secure the secrecy of the ballot, and to preserve the voter from undue influence

or restraint in voting; and that all statutes tending to limit the citizen in his exercise of this right should be liberally construed in his favor; that by the word "device," the statute meant some figure, mark, ornament, emblem or cypher which would distinguish the ticket from others cast at the election; that the word "device," which did not include "the residence of the candidates, for that may be stated for their better identification," nor the names of the candidates for President and Vice-President, "for they are indirectly supported by voting for the electors," and that the words *election ticket* printed on the inside, folded as the ballots usually are, furnished no means of distinguishing the ballots from others in the box, it being a mere description of what follows, and as it would be lawful under the strict letter of the statute to place the words "Republican Ticket," or "Democratic Ticket," on them it could not be seen how the spirit of the law could be violated by "the mere change of one word in the heading of the ballot." In Williams vs. State, 69 Texas, 368, the words "Democratic Ticket" were printed at the head of the ballot, followed by the names of several candidates for state officers, while about its centre were the words "People's Ticket," followed by the names of the opposing or People's candidates for county offices, and it was held that the ticket came within the letter of the law allowing "the name of the political party whose candidates are on the ticket" to be placed on it.

The Mississippi statute, sec. 137, Code of 1880, is that "all ballots shall be written or printed with black

ink, with a space of not less than one-fifth of an inch between each name, on plain white news printing paper, not more than two and one-half, nor less than two and one-fourth inches wide, without any device or mark by which one ticket may be known or distinguished from another except the words at the head of the tickets; but this shall not prohibit the erasure, correction or insertion of any name by pencil mark or ink upon the face of the ballot; and a ticket different from that herein prescribed shall not be received or counted." In Oglesby vs. Sigman, 58 Miss., 502, certain ballots had on their face and under the heading "Republican National Ticket," a printer's line or "dash-rule" of slightly ornamental character, and at three other distinct places under a name, a dash-rule, two of them being less fancy than the first mentioned, and the other being plain, and it was held that they vitiated the ballots, and that the effect of the statute was to condemn as illegal and not to be received or counted any ballot which has on its face or back any device or mark other than the names of the persons to be voted for, and "the words at the head of the ticket" by which one ticket may be distinguished from another. As to this case see, however, Lynch vs. Chalmers, 6 Congressional Cases, 338., 6 A. & E. E. L., 350, 419. In State vs. Calhoun, 61 Miss., 556, a printer's dotted line between the last office named on it, and the preceding name, was held to invalidate the ballot, the court affirming that it was not permitted to distinguish

between the different devices or marks which may be put on ballots. In the same state certain tickets were rejected in making the count because the names of candidates for the Legislature were found to be less than one-fifth of an inch apart, and this action was affirmed in Perkins vs. Caraway, 59 Miss., 222.

Section 5493 of the Revised Statutes of Missouri of 1879, after stating that the ballot should be a white piece of paper on which shall be written or printed the names of the persons voted for, provides that such "ballot shall not bear upon it any device whatever, nor shall there be any writing or printing thereon except the names of persons and the designations of the offices to be filled, leaving a margin on either side of the printed matter for substituting names. Each ballot may bear a plain written or printed caption thereon expressing its political character, but on all such ballots the caption or headlines shall not in any manner be designed to mislead the voter as to the name or names thereunder. Any ballot not conforming to the provisions of this chapter shall be considered fraudulent, and the same shall not be counted." In Shields vs. McGregor, 91 Mo., 534, a case in which the feature of headlines was involved, it is said that the statute was passed in view of the well known fact that ballots are in general previously printed, and circulated on election day by committees of persons appointed by the respective political parties or by those who advocate the election of certain parties, and it

was held that the purpose of the law was to prohibit the use of a caption calculated to induce the elector to conclude, from an inspection of the caption or headlines only, that the persons thereunder named are of his political persuasion when they, or any of them, in fact, are not; that headlines were not prohibited by the statute, but were permitted by it, yet when used they must tell the truth; that the statute fixed an absolute rule of evidence, and declares the prohibited ballots fraudulent, without regard to the fact whether they did in realty deceive the elector or not. See also Turner vs. Drake, 71 Mo., 285. In State *ex rel.* vs. Watson, 9 Mo. App., 593, a ballot having the words "*and collector*" after "*sheriff*," thus "sheriff and collector," was held to be good, and counted, the sheriff being also *ex officio* collector of taxes.

An Ohio statute provided for a single ballot on plain white paper without any device or mark of any description to distinguish one ticket from another, or by which one ticket may be known from another by its appearance, except the words at the head of the ticket; "and whenever any ballot, with a certain designated heading, shall contain printed thereon, in place of another, any name not found on the regular ballot having such heading, such name so found shall be regarded by the judges of election as having been placed there for the purpose of fraud, and such ballot shall not count for the name so found;" yet it was held in Roller vs. Truesdale, 26 O. St., 586, that the provision quoted did not exclude from being counted names of

candidates for *county officers* nominated by a *local party organization* and printed on a ticket properly designated as a county ticket, although such ticket was printed on and made part of a ballot which contains also the names of candidates nominated by another party for state and district offices with words at the head thereof intended to distinguish it from other tickets for state and district offices, the local organization having no state and district organization or candidates, but its members adhering, some to the Democratic and others to the Republican state and district organizations.

A statute of Connecticut, enacted in 1889, provides : (Sec. 1) that the ballots shall be printed on plain white paper furnished by the Secretary of State, as therein provided, and that "such ballots shall be of uniform size, color, quality and thickness, for each ballot of the same class, to be determined by the secretary. In addition to the official endorsement, the ballots shall contain only the names of the candidates, the office voted for, and the political party issuing the same. The name of the party issuing the ballot, the title of the office voted for, and the name of the candidates, shall be printed straight across the face of the ballot in black ink, and in type of uniform size, to be prescribed by the secretary of the state at least sixty days before any election held under this act." And (sec. 9) * * "If any envelope or ballot shall contain any mark or device so that the same may be identified in such manner as to indicate who might

have cast the same, it shall not be counted, but shall be kept by the moderator and returned to the town clerk in a separate package from the ballots which are counted at such election." And (sec. 12) that "all ballots cast in violation of the foregoing provisions, or which do not conform to the foregoing requirements shall be void and not counted; provided, however, that any voter may alter or change his ballot by erasing any name therefrom, or by inserting in place of any name thereof, in writing or by poster, the name of any person for any office to be voted for thereon other than the person thereon named for such office." At an election under this statute there were regular ballots provided which were prepared and issued by the Republican, the Democratic and the Prohibition parties respectively, these parties being organized and known by the names stated, and each party placing its name at the head of the ballot issued by it. In addition to these ballots, a ballot was issued by the Republican party which had at its head the word "Citizens," in the place of "Republican," but was in all other respects the same as the Republican ballots mentioned above. In Talcott vs. Philbrick, 59 Conn., 472, it is observed, upon the part of the majority of the court: "The question relates not to the paper, but to the printing or writing thereon. Four things only are allowable—the official endorsement, the names of the candidates, the office voted for, and the name of the political party issuing the ballot. * * Does such ballot conform to the statute? The ballot does not

speak the truth. It purports to have been issued by a Citizen's party, but it was in fact issued by the Republican party. It implies that there was a Citizens' party, but there was not. So if the argument that the name of the party issuing the ballot may be omitted altogether, is sound, it will hardly justify a misrepresentation. * * * The clause, 'the ballots shall contain only the names of the candidates, the office voted for, and the name of the political party issuing the same,' if construed by itself, might be regarded as permissive, and not mandatory. What is the ballot? It consists not merely of the paper of the prescribed size and quality, but also of the required printing thereon. No part may be omitted. If the name of the party may be omitted, so may the name of the candidate or office. If either of the last two is left out, its validity as a ballot is destroyed. * * But this clause can not be construed by itself; it must be taken in connection with other parts of the act. The next sentence of the same section is mandatory in terms. * * It will hardly do to say that the statute means that these three things (those stated in such 'next sentence') shall be printed, if printed at all. That is an interpolation inconsistent with the spirit and object of the act. The proviso in the twelfth section is significant. * * * No other erasure or writing is allowed. If any other writing is allowed, other provisions of the statute are rendered nugatory and meaningless." The ballots were held to be illegal (two of the five justices dissenting).

In Fields vs. Osborne, 60 Conn., 544, a Republican caucus adjourned for the purpose of forming a citizens' caucus. Thereupon ten or fifteen Democrats who were present, but had not participated in the proceedings, came forward and acted with the Republicans, about fifty in number, who were present, in nominating a citizens' ticket, the candidates upon which were taken from both parties. A collection was taken for the expense of printing the tickets. No steps were taken to effect a permanent organization of a citizens' party, or to provide for its further existence. The Republican party issued no tickets, and no ballots were used at the election except those headed "Democratic Ticket," and "Citizens' Ticket." The decision was that the *Citizens' Tickets* were issued by a political party, within the meaning of the statute. In the same case the words "For Judge of Probate, Henry H. Stedman," appeared at the bottom of the citizens' tickets in question, the selection of such officer at the election in question not being authorized, although the citizens' caucus had made the nomination indicated by the ballot; and on the Democratic ballot after "For Town Clerk," an officer to be chosen at such election, the words *"an ex-officio registrar of births, marriages and deaths,"* appeared. The words on the citizens' ticket and those italicised as being on the Democratic ballots were held to avoid the ballots. "If," says the court, "it was doubtful whether the act applied to them, if their legality depended upon a construction of the meaning or the language of the act, our duty

might not be plain. If they could be held to fall within the prohibition of any mark or device contained in the ninth section, instead of within the express prohibition of the first section, then it would be our duty to inquire whether they constituted a mark or device by which the ballot might be indentified in such manner as to indicate who might have cast the same. But no. A plain provision of the law is violated in a point concerning which the act does not authorize us to inquire into the extent or consequences of the violation. In short, the Legislature has seen fit to say that if a ballot contains the addition to its specified contents which these do, it shall be void. * * In regard to provisions which are plain on their face, which are not dependent upon the question of good faith, or the actual or possible result of disregarding them, we can only say, as in Talcott vs. Philbrick, the Legislature has spoken, and obedience is our first and only duty. It is at liberty to throw around the ballot box such safeguards and regulations as it may deem proper, and it is the duty of the citizen to conform thereto. Some inconvenience is not too great a price for an honest and pure ballot.''

In the same case, Fields vs. Osborne, the Democratic ballots were also objected to because the word "For" was printed on each of them before the name of every office printed on them. "If it was plain and clear," says the court, "that the act in limiting the contents of the ballot to the official endorsement, the

names of the candidates, the name of the political party issuing the same, and the office voted for, prohibited the use of the word 'for' before the title of the office, we should be bound upon the principles herein already recognized as sound, to declare the ballots void for that reason. But that the statute so intended is not plain and clear. On the contrary, the language is ambiguous. There is room for honest and intelligent men to differ." Having referred to former instances in which the same word had been similarly used, and to the fact that the Republican ballots in this very case contained it, and as. confirmatory that the language of the act was ambiguous it is said : "If ambiguous it is the proper subject of construction. In discharging the duty of construing it so that the voter shall not be deprived of his vote except. upon a plain and unambiguous provision of the law, we feel bound to hold that the act does not in terms and expressly, nor by necessary construction, prohibit the use of the word "for" before the title to the office. It follows, therefore, that neither its use nor the failure to use it, necessarily and of itself invalidates a ballot. The question of illegality is remitted to the ninth section of the act. If the regular ballots issued by a political party contain the word "for" before the title of the offices therein named, then it can not be held to be a "mark or device" so that the same may be identified in such manner as to indicate who might have cast the same, and therefore it is not obnoxious to that provision. If the regular ballots of a political party omit

the word "for," in the connection stated, then the use of the word on some of the ballots cast, inasmuch as it would be a mark or device by which the same might be identified, would be illegal. Each case must be governed by its own circumstances and decided as a question of fact upon the principles herein stated. Upon the facts in this case we hold that the ballots in question were not illegal and void because of the use of the word "for."

These decisions all recognize either expressly or by implication the right of the Legislature to make reasonable regulations as to ballots, to the end of preserving the purity of elections and the independence of the voter. In the Ohio case, Roller vs. Truesdale, it is said: "The propriety of excluding from the count fraudulent votes is conceded by all. We also concede the power of the Legislature to declare a rule of evidence by which fraud in a particular case shall be conclusively established without inquiring into the fact whether it did or did not exist. Such rule is declared by this statute and must be enforced. * * The purposes intended were: 1st, The prevention of actual fraud in procuring an elector to vote unintentionally for a candidate whose name is not on the *regular ballot* of his party; and 2d, To remove inducements for attempting such fraud, by declaring that a name so printed in a regular ballot, instead of the regular candidate, shall not be counted. Such wrong and such rem-

edy were the full measure of the legislative intention." See also Shields vs. McGregor, *supra*, and State vs. McKinnon, 8 Oregon, 499, 500.

It is always a question whether statutory provisions like the one in question are directory or mandatory. In State vs. McKinnon, 8 Oregon, 493, where the statute provided that the ballot should be on plain white paper without any mark or designation, and a ballot on colored paper was rejected as illegal, it was said that although the authorities cited against the rejection of the ballot sufficiently illustrated the principle governing the construction of statutes defining the duties of public officers as to their being mandatory or directory, and the reluctance of the courts to construe statutes providing the manner of elections so as to defeat the public will as expressed through the ballot box, they disclosed no instance where a voter had been accorded the privilege of disregarding a plain provision of law intended to promote the purity and secure the independence of elections, even in depositing his vote. And in McCrary on Elections, Sec. 501, where the decision of People vs. Kilduff, 15 Ill.. 492, holding, (under a statute enacting that the ballot should be on "white paper without any marks or figures thereon intended to distinguish one ballot from another,") that ballots printed on common ruled foolscap paper of a bluish tinge were legal; that the paper was white within the meaning of the statute, and was used accidentally and that the ruled lines were not placed there for the purpurpose of distinguishing the ballots, is referred to as having been decided upon the ground that the paper

was not used with an intent to violate the statute, it is said: It is quite clear that where a statute distinctly declares that ballots having distinguishing marks upon them shall not be received, or shall be rejected, it should be construed as mandatory, and not simply directory. And in the next succeeding section the same author says that if a statute prohibits the marking of ballots so that they may be distinguished by others than the voter and declares such ballots void, there is good reason for construing it as mandatory.

In our judgment the statutory provision under discussion is mandatory. Its purpose was that any ballot having any feature clearly prohibited by it should be deemed illegal, and not be treated as the lawful expression of an elector's will. To the extent that the law makers have gone, it is a valid regulaiion of the right to exercise the elective franchise. Viewing it in the light of the practical working of elections in so far as the preparation and distribution of ballots go, we see in it nothing amounting to an unconstitutional restriction of the right to vote. The object intended to be effected was the independence of the voter, and this was sought to be secured by prescribing to a certain extent the form of the ballot, and excluding from it whatever was within the prohibition of the provision, and thereby securing the secrecy of the ballot: inviolable secrecy as to the person for whom an elector may vote, being the material guarantee of the constitutional mandate that voting at popular

elections shall be by ballot. State ex rel. vs. Anderson, 26 Fla., 240, 259, 8 South. Rep., 1. The nearer the lawful approach to a perfect uniformity of ballots, the more perfectly is the secrecy of the ballot, and consequently the independence of the voter secured. The greater the uniformity, the less the possibility of distinguishing marks.

It is, however, not to be lost sight of that a ballot will never be vitiated by anything which is not clearly within the prohibiting words and meaning of the statute. The elector should not be deprived of his vote through mere inference, but only upon the clear expression of the law. In Commonwealth vs. Woelper supra, it is said: "The case is certainly within the words of the law. The ticket had something more than names on it, but is it within the meaning of the law? I think so." In State ex rel. vs. Philips, 63 Texas, 390, it is said that the decisions rather tend to restrict the exceptions which exclude a ballot than to extend them, and to admit the ballots if the spirit and intention of the law is not violated, although a liberal construction would violate it. * * The result as shown by the tickets deposited by legal electors must not be set aside except for causes plainly within the purview of the law; and, in Owens vs. State, 64 Texas, 500, the doctrine asserted is that all statutes tending to limit the citizen in the exercise of the right to vote should be liberally construed in his favor. This is the rule by which, in our judgment, the statutory provision

before us is to be judged, and its meaning arrived at and enforced. It is illustrated by the foregoing decisions of the Supreme Court of Indiana. In these cases, though the language of the statute excluding "distinguishing marks or other embellishments," did not confine such exclusion to the back of the ballots, yet as the inspectors were not given power to reject or refuse to count any ballot which. had found its way into the ballot box, but were authorized only to *refuse* all ballots *offered* of any other description, the statute was construed to have been intended only to protect the voter against having the nature of his vote detected, before his ballot went into the box, through its color, or some distinguishing mark thereon, by other persons who might be seeking to control him through intimidation, or otherwise, and that this purpose could be attained as effectually as was possible to legislative enactment, by securing uniform external appearance, and hence that distinguishing marks on the inside or face of the ballot could not be held to be within the purpose or purview of the statute. And it was also held that the ballots were good, even where the printing of the words on the inside was such as to be visible on the outside, and were even actually seen by the inspectors, and that where a ballot was within the letter of the statute, it was not to be rejected, even though it had distinguishing marks.

And the rule stated above is perhaps more fully ap-

plied in the cases from Texas, referred to above.
The effect of these Texas cases is that the word "device," associated as it is with the words picture,
sign, vignette, and stamp mark, is on account of such
association, to be construed to have meant some
"figure, mark, ornament, emblem or cipher," which
would distinguish the ticket from others cast at the
election, and not to include the shape of the ticket,
the residence of candidates, nor the names of candidates for President and Vice-President, nor the
words, election ticket, nor the words, people's ticket,
printed about the middle of a ticket. There cannot
be any doubt that the rhomboid shape, or any of these
words was equally as efficient an agent for identifying
a ballot as an eagle, a crescent, a flag, a square, or
compass, flowers, leaves and tendrils, or enigmatical
character would have been. The question—what is
within the prohibition—necessarily includes that of,
"what is the prohibition," and to answer the question
whether or not the ballots assailed in this action are
within the prohibition of the act of 1887, we must
determine what is its prohibition. There is no question as to the paper being white or clear and even cut.
We have seen what the rule is as to what may be
called the different shades of white. This case turns
upon the words "without ornament, designation,
mutilation, symbol or mark of any kind whatever,
except the name or names of the person or persons voted for, and the office to which such person or persons
are intended to be chosen." It is entirely clear that

the words "National Republican Ticket," and those of "Free Suffrage Ticket," printed as they are in type of the same size as the names or style of the office voted for, and in the same plain Roman letters, are not ornaments, nor mutilations, nor a symbol. Are they designations or marks? The term designation, if it stood alone, might necessarily mean any designation of a ballot, as democratic, republican, prohibition, or by other appellation. The meaning of designation, as found in the dictionaries, includes appellation; it, according to Webster, is: "that which designates; distinctive title; appellation." According to Worcester its meaning is: "that which serves to distinguish;" but the distinctive title, or name, or appellation, definition, as distinguished from the meaning of distinguishing by marks, is not within the meaning of the word as it is here used. This is shown by the use of the words, ornaments, mutilation, symbol, and particularly, in conjunction with them, those of "or mark of any kind whatsoever." Ornaments, mutilations and symbols are marks as distinguished from words or sentences, or appellations, or distinctive titles, and not only do they indicate that it is in this character the term "designation" is used, but the terminal expression, "or mark of any kind whatsoever," shows both that the Legislature understood itself as meaning, by the associated use of each and all the preceding terms, including that of "designation," things in the nature of marks as distinguished from words or writings, and as intending by these terminal words to prohibit any other thing in the like nature of a mark. If it had

been the intention of the Legislature to go beyond the distinctive character of the specific words, it would not have confined its concluding prohibiting words to marks, or any particular class of things, but would have used some general expression like "or anything whatsoever." As it is, the word "designation" is the only one in the group which is not confined in its meaning to the classification of marks, or that can include in its meaning words or appellations, and this being so, it must, unless there is something in the statute to prevent it, be construed to have been used as meaning only such designations as are in the nature of marks, which meaning is unquestionably included in the definition of the word.

Is there anything in the section, or in the statute, to preclude or defeat this construction? The first suggestion is, that the words "except the name or names of the person or persons voted for, and the office to which such person or persons are intended to be chosen," have this effect. If so, it is because they are made an exception to what would be prohibited by the preceding words, but for such exception. Upon both reason and authority we do not think this position tenable. The names of the persons voted for, and of the offices which it is proposed they shall fill, are not within the prohibitory words, and would not be if the section contained nothing that follows the word "whatsoever," or, in other words, only contained what precedes the word "except." Though the provisions following the word "whatsoever" are in form of an exception seem-

ing to exclude them from the effect of preceding words, they are in fact not within the meaning or purpose of these words. Not only was it not the purpose of these words to exclude from the ballot the names of the persons and offices, but, as we have shown above, nothing is within their purpose or effect but things in the nature of marks, as distinguished from words or appelations. This same point was practically involved in the Texas cases. There the ballot was, under the statute, to be "without any picture, sign, vignette, device or stamp mark, *except* the name of the political party whose candidates are on the ticket." Still it was held that the prohibitory words preceding the word "except," meant only some figure, mark, ornament, emblem or cipher, and did not include the residence of candidates, nor the names of candidates for President and Vice-President, nor even the words "People's Ticket," written about the middle of a ballot having the heading: "Democratic Ticket." The very same form of expression used in our statute is to be found in the Indiana statute, *supra.* In Missouri the statutory provision was that the ballot "shall not bear upon it any device whatever, nor shall there be any writing or printing thereon, except the names of persons, and the designation of the offices to be filled," yet allowed truthful captions; still when a sheriff was *ex-officio* collector, a ballot having the words "sheriff and collector" on it, was held to violate the law.

Nor do we think there is in any other part of the statute anything that can be successfully invoked to

overcome the views announced above as to the effect of the prohibitory clause. The only other feature that seems worthy of consideration in this connection is the concluding clause of the section under discussion, which clause is in these words : "and no ballot of any other description shall be counted." In the Texas statute it was provided that "any ticket not in conformity with the above shall not be counted in counting the votes;" while the Missouri statute enacted that "any ballot not conforming to the provisions of this chapter shall be considered fraudulent, and shall not be counted." These provisions merely announce the consequences to attend a ballot which is in violation of the statute; they do not add to, or take from, those provisions which prescribe or regulate the ballot; it is by the latter, and not the former, that we determine what can and can not be on a ballot without violating the law.

We fail to find in the decisions falling under our observation, unless it be those in Connecticut, anything which conflicts with the conclusion indicated above. There is certainly nothing in the Pennsylvania and California cases; on the contrary, that of Coffee vs. Edmonds, 58 Cal., 521, might be cited as affirmatively supporting our views. In the two Mississippi cases involving the statutory provision as to "any device or mark," the printer's dash line, on account of which the ballots were held illegal, were clearly "marks." We are not called upon to decide between the conclusion of that court in the third case, Perkins vs.

Carraway, 59 Miss., 222, and the views of the California court in Kirk vs. Rhoads, 46 Cal., 398, as to the very slight departure from the prescribed space between names on a ballot.   In the Connecticut case, the court puts the rejection of the ballot which contained the name of a candidate and office not the subject of choice at the election in question, and the one which had on it the ex-officio duty of the town clerk, on the plain prohibition of the statute, that "in addition to the official endorsement, the ballot shall contain only the names of the candidates, *the office voted for*, and the political party issuing the same, as to which, in the opinion of the court, there was no room for construction, or judicial power to inquire into the extent or consequences of a violation.   We do not say that this conclusion, at least in so far as the *"ex-officio"* feature of one of the ballots, is not in conflict with the Missouri case of State vs. Watson, *supra*.   In the case of Fields vs. Osborne, *supra*, we find that the Connecticut court in deciding, under the same provision of the statute, a question as to the effect of the use of the word "for," before the name of the office, admits that the statute was not plain and clear, but that its language was ambiguous, and recognizing the rule upon which we stand and have asserted above— that in such cases the duty is to construe "so that the voter will not be deprived of his vote except upon a plain and unambiguous provision of the law"— and it held that the provision referred to did not either in terms and expressly or by necessary construction prohibit such use of the stated word.   It further held,

however, that the word used as it was in all the tickets of the same class was not within the "mark or device" provision of the act, yet expressed the opinion that it would have been if some of them had had it, and others had not. In this last expression of opinion as to what might or would be the law under certain facts alone, and not in anything decided as to a case actually before it, is there even any seeming conflict between our own conclusion and that of the Connecticut court. It is apparent that the statute of that state goes much further than ours, and that in ours there is much more room for construction, and we find in the expression of that court nothing in view of our statute and the authorities upon which we rest, to shake the conclusion we have reached.

Our conclusion is that the ballots assailed are legal, and that it is the respondent, and not the relator, who was duly chosen to the office in question at the election in 1888; and further, as held in a former opinion in this cause, that though the respondent did not, for the reasons there indicated, qualify and receive his commission under that election, he has, in the absence of an appointment by the Governor since the commencement of the new term, continued to be clerk of the Circuit Court of Hernando county by virtue of his former commission, under Section 14 of Article XVI of the Constitution. State *ex rel*. Law vs. Saxon, 25 Fla., 792, 6 South. Rep., 858.

Judgment will be entered for the respondent.

Mr. Justice Taylor dissents.