### COLUMBUS (CITY) v. JOHN T. BARR.

1. MEANING OF WORDS USED IN STATUTE NOT DETERMINED BY LEXICOGRAPHERS, WHEN.

Whether or not a newspaper is one of "opposite politics" from that of another, within the meaning of Lan. R. L. 3109 (B. 1536-619), which requires that all ordinances and resolutions requiring publication shall be published in newspapers of opposite politics, cannot be determined from a lexicographer's standpoint, for the reason that more than one signification is usually and ordinarily given to such words, owing to the context.

 Columbus v. Barr.

2. LEGISLATIVE INTENT OF LAN. R. L. 3109 (B. 1536-619) IS PUBLICITY, ETC.

The legislative intent in providing by Lan. R. L. 3109 (B. 1536-619) that all resolutions and ordinances requiring publication shall be published in newspapers of opposite politics, was to provide the widest publicity for the public acts of the municipal council, and not to cheapen the publication by competitive bidding; and a liberal construction of said statute so as to provide for competitive bidding should not be adopted, if such construc-tion would narrow publicity.

8. INDEPENDENT NEWSPAPER NOT ONE OF "OPPOSITE POLITICS" WITHIN MEANING OF LAN. R. L. 3109 (B. 1536-619).

An independent newspaper which refuses to be bound by the ties of allegiance to any particular political party, is not within the meaning of the term "opposite politics," used in Lan. R. L. 3109 (B. 1536-619), for the reason that when compared with other newspapers, it may be of opposite politics on one question, and of the same politics on another, at one and the same time.

APPEAL from Franklin common pleas court.

J. M. Butler, for plaintiff.

W. O. Henderson, for defendant.

## WILSON, J.

This action is prosecuted by the city solicitor in the name of the city at the request of a taxpayer. It seeks to enjoin the defendant, who is the city clerk, from entering into a contract, authorized by a resolu-tion of the city council, with the Columbus Dispatch, an independent newspaper, published in the English language, and of general circula-tion in the city, for the publication of the ordinances and resolutions of the city council, required by law to be published in two newspapers of "opposite politics."

The claim is, that such contract and publication would be unau-thorized, illegal and void, for the reason that the paper in question is not within the designation of the statute.

The provision of the statute is, that "All ordinances and resolu-tions requiring publication shall be published in two newspapers of opposite politics, published and of general circulation in such municipal-ity." Laning R. L. 3109 (B. 1536-619).

The character of the Columbus Dispatch is, as shown by the evi-dence, beyond question, that of an independent newspaper. As is testi-fied by its editor:

"It has its politics, and by this I mean, its political sentiments and opinions, or its political complexion. Its politics consists in an active and positive advocacy of such principles and policies touching the ad-ministration of public affairs, as it believes to be right and beneficial to the state and community, and of such candidates for office as will best promote the public welfare, and of doing this in its own way un-

trammeled by any party organization, caucus, man or set of men." It distinctly disavows any party name, and refuses to be bound by any party allegiance. The only question, therefore, is, Does such a newspaper fall within the language of the statute?

The statute has not been construed by the courts of this state.

The only authorities cited, in argument, are standard definitions of the words to be interpreted by the leading lexicographers and scientific writers, and *People* v. *Sullivan Co. (Supvrs.)* 56 N. Y. 249; *Shields* v. *McGregor*, 91 Mo. 534 [4 S. W. Rep. 266] ; *Weaver* v. *Toney*, 21 Ky. Law 1157 [54 S. W. Rep. 732].

The meaning of the words cannot be determined from the lexicographer's standpoint for the reason that more than one signification is usually and ordinarily attributable to them, owing to the context. The authorities cited are neither controlling nor persuasive. Resort must be had to other means in order to ascertain the intention of the legislature, which must govern. Similar provisions in other statutes reflect some light upon this question. Laning R. L. 2193 (R. S. 917) provides that the commissioners shall cause their financial statement, together with the report of the examiners to be published "in two newspapers of different political parties."

In the case of *Ohio State Journal Co.* v. *Brown*, 10 Circ. Dec. 470 (19 R. 325), this court held that an independent newspaper was not within the meaning of this section. If its language is the equivalent of the language to be interpreted here, that case is authority; otherwise not.

Laning R. L. 2477 (R. S. 1129) requires the report of the committee appointed to examine the treasury to be published "in two newspapers of opposite politics." Laning R. L. 7439 (R. S. 4367) provides:

"Every proclamation for an election, or fixing the times of holding court, notice of the rates of taxation, bridge, pike, and notice to contractors, and such other advertisements of general interest to the taxpayers as the auditor, treasurer, probate judge, or commissioners may deem proper, shall be published in two newspapers of opposite politics, at the county seat, if there be such published in the county seat." Before the revision of 1880 (73 O. L. 75) the language of this section was, "in two newspapers, one of each political party, if there be two papers of different political principles printed within said county in each of the several counties of this state." It will be observed this language was in need of abridgment. Unless the plain meaning of the statute in its present form forbids, it is open to the presumption that the codifiers did not intend to change the law, but to express it in better

Columbus v. Barr.

phraseology. It would be remarkable, also, if the proclamation for an election were not required to be published in the party papers.

Laning R. L. 2164 (R. S. 895) reads:

"The commissioners shall subscribe for one copy of the leading newspapers of each political party, printed and published in their county, and cause the same to be bound and filed in the auditor's office, as public archives, for the gratuitous inspection of the citizens of such county."

It is not conceivable that the purpose of this statute is to establish a reading room. Its purpose is to preserve a reference file of the publications required by law to be made by the various officers of the county, open to the inspection of the public, as well as for providing a refutation of any claimed delinquencies in that regard. In order that these publications may thus be preserved, it is necessary that they be published in political party newspapers, for which alone the commissioners are authorized to subscribe.

It follows from the language of the foregoing statutes that unless the words "different political parties" and "opposite politics" mean the same, the bulk of the public printing provided for in Lan. R. L. 2477 and 7439 (R. S. 1129 and 4367) may be omitted from the files, because not published in a party newspaper.

A construction that would make this result possible is unreasonable, and cannot stand opposed to a construction which, by holding the terms in the different statutes synonymous, will preserve all official publications.

The word, politics, when applied to the science of government in this country, means party politics. The people organize themselves into parties for the purpose of imposing upon the government a more or less well defined policy, through the election of chosen candidates under a party name, each party having its own policy and candidates. In the common acceptation, the arena on which these parties contend is the field of American politics.

So in the statute under review, the legislature did not use the words "opposite politics" in any broader sense. It was not intended that the various boards and councils, whose duty it is to provide for the publication, should take upon themselves the duty of determining the politics of any given newspaper, abstractly, from principle. If that were permissible, the board or the council, not the legislature, would determine the kind of paper in which the publication could be made, and by refinement, could defeat the very purpose of the statute. That the municipal council does not have arbitrary power, or even wide

latitude, in the selection of a newspaper, is made obvious by the provisions of Lan. R. L. 3018 (R. S. 1537; B. 1536-908) which prescribe when it may depart from the statutory designation. The kind of newspaper is predetermined by an established party allegiance, which denotes its politics, and which the council is not at liberty to ignore.

An independent paper, which refuses to be bound by the ties of party allegiance, is not within the classification, for the reason that, compared with any other paper, it may be of opposite politics on one question, and of the same politics on another, at one and the same time; of opposite politics today and of the same politics tomorrow, evading the provision of the statute at will.

The purpose of the legislature was to provide for the widest publicity of the public acts of the municipal council, under a general law. It is common knowledge that this purpose would be best subserved as a general rule, by publication in the newspapers of opposite party politics, for the reason that when applied to all municipalities, they are the local papers that generally reach the most people. The independent newspaper, as a rule, is confined to the larger cities. It may best subserve the purpose of the statute in a few cities, but it is the exception that must fail under a general law.

The legislature did not undertake to cheapen the publication by competition. The competitive bidding resorted to in this case, is the policy of the city, and, as is expressed in the ordinance providing for the same, is not to be used to annul the statute. It may be that this interpretation opens the door to political aggrandizement, but it still remains that extended publicity is the governing purpose of the statute, and must be kept to the fore when seeking to discover the legislative intent. No useful public purpose could be subserved by holding that this language should receive a more liberal construction, unless it be that it would provide competition, but that must yield if it would narrow publicity.

The finding and decree will be for the city. Injunction as prayed for.

**Sullivan** and **Dustin, JJ.**, concur.