*J. M. Wilson, N. O. Ross* and *R. P. Effinger,* for appellee.

———————————●———————————

DRULINER *v.* THE STATE.

ELECTIONS.—REGISTRY LAW.—Section 23 of the registry law of 1867, (Acts 1867, p. 113) which requires all tickets to be written or printed on "plain white paper, without any distinguishing marks or other embellishment thereon," and makes it the duty of inspectors of elections to refuse all ballots of any other description, was intended to prevent the intimidation of, or undue influence over voters, by enabling them to cast a ballot, the character of which cannot be determined from an inspection of the outside thereof.

SAME.—This object is secured by requiring all ballots to be uniform in external appearance, and the law cannot therefore be construed to prohibit a distinguishing mark on the inside of the ticket.

SAME.—At an election for councilmen in the city of *Laporte,* the ballots cast for one of the candidates had printed at the top thereof, on the inside, the words "City Union Ticket;" and it was held that they were not illegal under section 23 of the registry law.

APPEAL from the *Laporte* Circuit Court.

ELLIOTT, J.—This was an information in the name of the State, on the relation of the prosecuting attorney, against *Druliner,* the appellant, charging him with having usurped and unlawfully intruded into, and with holding the office of councilman of the fourth ward of the city of *Laporte,* and praying that he be ousted therefrom, and that *Hart L. Weaver* be declared entitled thereto.

*Druliner* answered by a general denial. The case was tried by the court, who found the defendant guilty, and,

having overruled a motion for a new trial, rendered a judgment of ouster against him, and declared *Hart L. Weaver* legally entitled to hold said office.

The correctness of the finding of the court, under the facts presented by the agreement of the parties, is the only question in the case. The facts, as agreed upon, are as follows: An election was held in the city of *Laporte*, on the 7th day of *May*, 1867, for the purpose of electing, among other officers, a councilman for the fourth ward of said city; that *Hart L. Weaver* and said *Druliner* were the candidates at said election for said office, and no ballots were cast for any other person for said office at said election; that said *Weaver* and *Druliner* were both residents of the fourth ward, and eligible to said office; that one hundred and forty-four ballots, and no more, were cast for said office at said election, of which number ninety-eight were cast for said *Weaver* and forty-six for said *Druliner*. On the face, or inside, of the ballots cast for *Weaver* were printed these words: "City Union Ticket." The ballots were all printed on plain white paper, and, with the exception of said words, nothing was written or printed on said ballots except the names of the candidates and the offices they were voted for. The ballots were received by the judges and inspectors of said election, and counted by them, without protest or objection, and the board of canvassers of said election, upon canvassing said ballots, awarded to said *Weaver* the customary certificate of election; but said *Druliner* was exercising the duties of said office, and claimed to do so by virtue of said election, and not otherwise.

It was further agreed that if the ballots so cast for *Weaver* should be held legal, then judgment of ouster should be rendered against *Druliner*, and that *Weaver* be admitted thereto; but if the ballots so cast for *Weaver* should be adjudged illegal, then judgment should be rendered for *Druliner*.

The decision of the question depends upon the construction to be given to the 23d section of the registry law of

1867, which provides "that all ballots which may be cast at any election hereafter held in this State, shall be written or printed on plain white paper, without any distinguishing marks or other embellishment thereon, except the name of the candidates and the office for which they are voted for, and inspectors of elections shall refuse all ballots offered of any other description: *Provided*, nothing herein shall disqualify the voter from writing his name on the back thereof."

It is claimed by counsel for the appellant, that the words "City Union Ticket," printed at the top of each of the ballots cast for *Weaver*, constitute a "distinguishing mark," within the meaning of the section of the act above cited, and render the ballots void, and that all the legal ballots having been cast for the appellant, he was legally elected, and is entitled to hold the office.

The construction contended for is, that it was the intention of the legislature to exclude from the ticket every distinguishing mark, from the inside as well as the outside, and that any such mark on either side of the ticket renders it void, whether it be visible, or not, to the inspector when the ticket is presented to him; that, if visible, it is the duty of the inspector to refuse the ticket when it is presented; but if the mark be on the inside of the ticket, and cannot therefore be seen by the inspector when the ticket is folded and thus presented to him, and it thereby gets into the ballot box, it is nevertheless illegal and void, and should be rejected by the inspector and judges in counting out the ballots.

After a careful consideration of the question, we cannot sustain this construction of the statute. If it be conceded that the words "City Union Ticket," printed at the head of the ballots cast for *Weaver*, were intended to designate a particular political party, or organization, and might constitute a distinguishing mark, still the question is, were they so placed on the tickets as, in fact, to constitute such a mark, within the meaning of the statute?

The construction of the statute contended for would lead
to absurd consequences, and come in conflict with other
statutory provisions which we are satisfied the legislature
did not intend to repeal. The act requires all ballots to be
written or printed on plain white paper, without any dis-
tinguishing marks or embellishments thereon, and makes it
the duty of the inspector to refuse all ballots offered of any
other description; but it does not authorize the inspector
and judges to reject a ballot upon the discovery of such a
mark or embellishment at the time of counting out the
ballots, which could not be seen by the inspector at the
time it was voted. The color of the paper is readily de-
termined by an inspection of the folded ballot, and so if it
should have upon it any external visible mark or embellish-
ment, it would be detected in the same way, and should be
refused, but it was certainly not the intention of the legis-
lature to require the inspector to open and examine every
ballot offered, to ascertain if it contained such an objection-
able mark or embellishment. Such an examination would
be in conflict not only with other statutes, but with the
spirit and policy of the law itself.

The 18th section of the act regulating general elections,
(1 G. & H. 309), makes it the duty of the inspector, when a
ballot is received, to "put the same, unopened, into the bal-
lot box; and section 50 of the act defining misdemeanors
provides that "if any judge, inspector, clerk or other officer
of an election shall open or mark, by folding or otherwise,
any ticket presented by such elector at such election, or
attempt to find out the names thereon, or suffer the same
to be done by any other person, before such ticket is de-
posited in the ballot box, he shall be fined in any sum not
exceeding one hundred dollars." 2 G. & H. 473.

The object of the act under consideration evidently was
to protect the elector from the undue influence and control
of others, and secure to him entire freedom of opinion in
the exercise of the elective franchise, by enabling him to
cast his vote in such a manner as to prevent others, who,

from their particular relations to him, might, by intimidation or otherwise, seek to control his vote, from being able to determine, from the color of his ticket, or some distinguishing mark thereon, the party or person for whom he voted. This object would seem to be secured, as far as legislative enactment could effect it, by requiring all the ballots cast to be uniform in external appearance, and such, we think, is the proper meaning of the section of the statute under consideration.

The judgment is affirmed, with costs.

*J. Bradley*, for appellant.

*J. B. Belford*, for appellee.

