| 65 | 393 |
|----|-----|
| 128 | 482 |
| 65 | 393 |
| 150 | 430 |
| 65 | 393 |
| 161 | 250 |

## THE STATE, EX REL. JULIAN, *v.* ADAMS.

CONTESTED ELECTION.—*Information.*—*Parties.*— *Jurisdiction.*— Under sections 749 and 750, 2 R. S. 1876, pp. 298 and 299, the right to an office may be contested by an information filed in the circuit court, in the name of the State, on the relation of the contestor, against the contestee.

SAME.—*Ballots.*—*Names showing through Paper.*—The fact, that the ballots cast for the candidate of a particular political party for a certain office are so printed on the inside, that lawful names and designations printed thereon can be seen through the paper does not render such ballots illegal.

From the Hendricks Circuit Court.

*S. H. Buskirk*, *R. Hill*, *J. W. Nichol* and *J. F. Julian*, for appellant.

*C. Byfield* and *L. Howland*, for appellee.

BIDDLE, J.—The information of the relator in this case states that the counties of Marion and Hendricks constitute the Nineteenth Judicial Circuit; that an election was held therein, on Tuesday, October 8th, 1878, for the purpose of electing, among other officers, a judge of the circuit; that the relator and the appellee were opposing candidates for said office; that, in the county of Marion, the relator received, at said election, 10,50.4 votes for said office, and the appellee received 10,581 votes for said office; that, in the county of Hendricks, the relator received 2,347 votes for said office, and the appellee received 2,318 votes for said office; that the returns of said votes were duly certified and transmitted to the Secretary of State; that the Secretary of State, in the presence of the Governor, estimated the number of votes given for the relator and the appellee for said office, and certified to the Governor that the appellee had received 48 more votes for said office than had been received by the relator; whereupon the Governor issued a commission to the appellee for said office; that the relator is a qualified elector of the county of Marion, and is entitled to said office for the following reasons:

" That the said Joshua G. Adams was the candidate of the Republican party, in the counties composing said judicial circuit, for the said office, and his name was printed on the Republican ticket, which was printed, and furnished at the various polls for the use of such persons as desired to vote the said ticket; that the said ticket was printed on very white, thin, and hard paper, which rendered it quite transparent; that, at the head of said ticket, the words 'Republican Ticket' were printed in with very peculiar and unusual type, and in unusual form, and with very black ink, and, by reason thereof, the words 'Republican Ticket' were

readily seen and easily read and understood by an inspection of the other side of the ticket; that, in the ordinary way of folding the said ticket, the words 'Republican Ticket,' so printed as aforesaid, were exposed in such manner that the officers of the election, or any other person who might be present and desire to know the ticket which any elector was about to vote, could readily ascertain and know whether a person was voting the Republican, Democratic or National ticket; that the tickets used by the Democratic and National parties at said election were printed on soft white paper, and while they had at their heads 'Democratic Ticket,' and 'National Ticket,' such words were so printed that they created no external mark or designation; that the words 'Republican Ticket,' printed on the head of the tickets which were generally cast and voted for the said Joshua G. Adams, were so printed as to constitute an external distinguishing mark which enabled persons, at a distance of several feet, to ascertain the party or person for whom the electors holding such tickets were voting; that five thousand of the ballots that were cast, given, received and counted for the defendant were printed in the manner herein set out, and were so folded that the inspectors of elections of said election could have known, and actually did know, that the persons who were voting the same were voting the Republican ticket, and with such knowledge, in violation of law, received and counted the same for defendant, and by reason thereof said tickets were in violation of the election law of said State, in force at the time of said election, and were illegal, and such votes ought not to have been received, counted and estimated for the said Joshua G. Adams at said election, the same ballots having thus been devised, printed and circulated by the Republican party for the fraudulent purpose of deceiving, intimidating and controlling the votes of the people, and of preventing them from freely

exercising the right to vote as they pleased; and the relator avers that such was the effect."

The information also alleges, that certain irregularities took place at said election in Franklin township, in Hendricks county; but as these are not insisted upon by the relator, or rather are waived in his brief, we do not extend this opinion by their statement herein.

Prayer for process, answer, damages and general relief.

The appellee demurred to the information, stating the following grounds of demurrer;

1.  That the court has no original jurisdiction of the subject-matter of this suit;

2.  Because the complaint does not state facts sufficient to constitute a cause of action.

The court sustained the demurrer; the appellant refused to amend, excepted and appealed.  Judgment for appellee.

The appellee insists that the court had no original jurisdiction over the subject-matter of the suit by information for a writ of mandate, because the relator has an adequate legal remedy under the act for contesting elections.  1 R. S. 1876, p. 448.

The code enacts, that, "When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, or any franchise within this State, or any office in any corporation created by the authority of this State," an information may be filed against any person or corporation by the prosecuting attorney, " or by any other person on his own relation, whenever he claims an interest in the office, franchise or corporation, which is the subject of the information."  2 R. S. 1876, pp. 298 and 299, secs. 749 and 750.

It is clear, we think, that the relator may seek the remedy he asks under this statute; and, while it is also clear, as a general principle, that a party is not entitled to a writ of a mandate when he has any other adequate legal

remedy; yet, where the statute expressly gives the right by information, we do not think another statute giving another adequate legal remedy will take away the right given by information. At least, whatever may be the reasoning, the question must be considered as settled in this State. This court has frequently held that the right to an office may be contested by an information, during the time the statute for contesting elections was in force. *Barkwell* v. *The State*, 4 Ind. 179; *Huddleston* v. *Pearson*, 6 Ind. 337; *Yonkey* v. *The State*, 27 Ind. 236; *The City of Madison* v. *Korbly*, 32 Ind. 74; *Gass* v. *The State*, 34 Ind. 425; *The Board of Commissioners of Boone County* v. *The State, ex rel.*, 61 Ind. 379; *Reynolds* v. *The State, ex rel.*, 61 Ind. 392.

The remaining question is, whether the facts alleged in the information are sufficient to show that the relator is entitled to the office he claims.

The section of the statute which the relator claims under, as vitiating the ballots cast for his opponent, reads as follows:

" Sec. 23. That all ballots which may be cast at any election hereafter held in this State shall be written or printed on plain white paper, without any distinguishing marks or other embellishment thereon except the names of the candidates and the office for which they are voted for, and inspectors of elections shall refuse all ballots offered of any other description : *Provided*, Nothing herein shall disqualify the voter from writing his own name on the back thereof." 1 R. S. 1876, p. 439.

Under this section, it has been held by this court, that writing or printing upon the face, or upon the inside of the ballot, the following words : " Union City Ticket," or " Republican Ticket," or " Republican County Ticket," or " Republican Township Ticket," is not in violation of the law, and does not authorize the rejection of the ballot. *Dru-*

*liner* v. *The State*, 29 Ind. 308 ; *Stanley* v. *Manly*, 35 Ind. 275 ; *Millholland* v. *Bryant*, 39 Ind. 363.

The only distinction between the " distinguishing marks " upon the ballots which were held good under the above decisions, and those which we are now considering, is, that, in the present case, the printing on the inside of the ballots could be seen upon the outside, through the paper ; while, in the former cases, it does not appear whether the printing upon the inside of the ballots could have been so seen or not. To push the meaning of the statute to the extreme of holding that the inspectors of elections shall refuse to receive ballots because the printing upon the inside, which is not unlawful, can be seen on the outside through the paper, we think would be a most unwarrantable construction of its language. The irregularity or malconduct in the inspectors in receiving such ballots can not affect the case if the votes cast thereby are otherwise legal, for it is enacted, that " No irregularity or malconduct of any member or officer of a board of judges or canvassers, shall set aside the election of any person, unless such irregularity or malconduct was such as to cause the contestee to be declared elected, when he had not received the highest number of legal votes." * * * Sec. 15, 1 R. S. 1876, p. 450. See, also, *Dobyns* v. *Weadon*, 50 Ind. 298 ; *Allen* v. *Crow*, 48 Ind. 301 ; *Hadley* v. *Gutridge*, 58 Ind. 302.

Upon the face of the information it appears that the appellee received a majority of 48 votes over the relator, and nothing appears which shows that any of the votes cast for the appellee were illegal.

The judgment is affirmed, at the costs of the relator.