State, *ex rel.* Heiney, *v.* Wasson.

———◆———

No. 11,955.

STATE, EX REL. HEINEY, *v.* WASSON.

ELECTIONS.—*Ballots.*—The statute, R. S. 1881, section 4701, requiring election tickets to be printed on plain white paper, prescribes no grade, quality or thickness of paper, and does not require absolute uniformity.

SAME.—*Evidence.*—Where the question involved is whether certain tickets printed on paper, plain and white, but unusually heavy, were lawful, evidence by a printer that for ten years he had been in the habit of printing tickets on ordinary paper, and that paper such as was used for the tickets in question had not been so used, is immaterial, and proof that the person whose right to office was in question, because of the use of such thick paper, had no agency in having such paper used, is merely harmless.

SUPREME COURT.—*Weight of Evidence.*—Whether a cause be at law or in equity, the Supreme Court will not reverse on the weight of the evidence.

From the Marion Circuit Court.

*D. Turpie, J. W. Nichol* and *J. E. Franklin,* for appellant.
*T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker, E. Daniels, R. B. Duncan, J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellees.

HAMMOND, J.—This was a proceeding, in the nature of a *quo warranto,* against the appellee, to show by what right or authority he exercised the duties of the office of treasurer of Marion county.

A trial by the court resulted in a finding for the appellee, upon which judgment was rendered over the relator's motion for a new trial and exceptions. The overruling of that mo-

tion is the only error assigned. The causes for which the new trial was asked were, that the finding was contrary to the law and the evidence, not sustained by sufficient evidence, that certain evidence offered by the relator was improperly excluded, and that certain other evidence offered by the appellee was improperly admitted.

The questions in issue, as presented by the information and the answer, are stated in the appellant's brief as follows:

"The information herein, which is the complaint in such cases, is in two paragraphs. The information charges, substantially, that the relator received at the November election, 1882, 12,642 votes for the office of treasurer of Marion county, Indiana ; that the said defendant Wasson had counted as cast for him 13,028 votes, and had been declared elected by a majority of 386 votes, and had been duly commissioned and qualified as such treasurer, and was acting as such in said office ; but that the tickets cast for the defendant at said election were not printed ' on plain white paper, without any distinguishing mark or other embellishment,' as the law directs; ' but that the said tickets upon which said Wasson's name was printed were of smooth finish, upon white, double-ply cardboard, stiff and elastic, thicker than ordinary plain white paper,' and was ' such as to easily distinguish it from plain white paper.'

"The second paragraph of the information avers that the tickets upon which the defendant Wasson's name was printed at said election ' were not printed upon plain white paper ' without any ' distinguishing mark or other embellishment,' as required by law, but were printed ' upon lithographic plate, stiff and elastic, smoother and thicker than plain white paper, and could be, and were, readily distinguished from tickets printed upon plain white paper, both by *touch* and *sight*;' ' that the election officers, viz., inspectors, judges and clerks could readily ascertain and know, both by *touch* and *sight*, and any other persons could readily know whether a voter was voting a Republican ticket or some other ' at said elec-

tion ; that the Democratic and National tickets at said election were printed upon ' plain white paper;' that 5,000 of such lithographic plate tickets were cast and counted for the defendant at said election, in contravention, and in fraud of the statute upon the subject of elections; that such votes and ballots were fraudulent and void.

"The answer by Wasson is a special general denial, in which he admits that he has possession of the office, as charged, but denies that any of the ballots cast for him were fraudulent, or that he had any knowledge of their character before use."

The simple question presented by the record is, were the ballots cast for the appellee at the election under which he claims his office illegal?

Section 4701, R. S. 1881, being section 23 of "An act concerning elections," approved April 21st, 1881, Acts 1881, p. 482, is as follows:

"All ballots which may be cast at any election hereafter held in this State shall be written or printed on plain white paper, of a uniform width of three inches, without any distinguishing mark or other embellishment thereon except the names of the candidates and the offices for which they are voted for."

The case made by the information, so far as the pertinency of the evidence thereto is concerned, is that the tickets upon which appellee's name appeared were not printed upon plain white paper without any distinguishing mark, etc., thereon except the names of the candidates and the offices they were voted for ; but, on the contrary, said tickets " were printed upon lithographic plate paper, which was stiff and elastic, smoother and thicker than plain white paper, and could be, and were, readily distinguished from tickets printed upon plain white paper, both by touch and sight."

It does not appear to have been the intention of the Legislature, in section 4701, *supra*, to require absolute uniformity in the ballot with regard to the grade or quality of the material upon which it is to be printed. It seems to be sufficient

State, *ex rel.* Heiney, *v.* Wasson.

if the paper is plain white, of the width of three inches, and without distinguishing marks or other embellishments thereon, except the names of candidates, etc.

There was evidence in the case tending to show that there are various grades of paper known as plain white paper, some of which were heavy and others light. A witness testified that the words "plain white paper" would include all grades of white paper from common newspaper to the best class of book paper, and that the term "plain white paper" did not indicate any particular grade or quality of paper. There was much evidence to the same effect.

The tickets on which the relator's name appeared were printed upon what a witness described as "No. 2 book paper." Those containing the appellee's name were printed upon paper described by the same witness as "Western plate," or "lithographer's paper," which was heavier and thicker than the paper described as "No. 2 book paper."

While it would be competent for the Legislature to prescribe the quality and grade of paper to be used for ballots, it has not done so. In the absence of a statutory standard, the difficulty of judicially determining the grade and quality of paper that should be used for ballots is well shown in the following extract which we take from the brief of counsel for the appellee:

"There are ninety-two counties in the State of Indiana. We suppose that in a large majority of the counties the tickets would be printed by the local offices in the various counties; the paper which would thus be used for ballots throughout the State would vary according to the quality and grade of white paper in stock in the various offices. If even the cheap papers were found in stock in every office, unless they were the product of the same mill, there would not be a uniformity of appearance; it is at once seen that unless some given grade or quality of plain white paper is fixed by the statute as a standard, or some method of conference provided, or authority vested in some officer of the State to furnish the

State, *ex rel.* Heiney, *v.* Wasson.

paper, or direct the quality or grade of paper to be used, the tickets in the various counties would, almost of very necessity, differ essentially in substance and appearance. We can not suppose that such a fact as this escaped the attention of the General Assembly ; and if that body had desired uniformity in the tickets, they certainly would, by some method, have attempted to fix a standard or provide for such uniformity by some other means that readily suggest themselves to every mind upon very short consideration. Such a construction of the statute as is not contended for by appellant would almost inevitably lead to a rejection of a large majority of all the ballots cast at any general election in the State of Indiana, if the ballots cast at any particular precinct be adopted as a standard.

"Now, neither party can adopt any particular grade of paper for their ballots, and then claim that the other party must make the same selection. We have as much right to say to the appellant that your ballots were printed on too thin paper, and for that reason were distinguishable, as they have to say that our tickets were too thick, and therefore distinguishable."

The object of the statute undoubtedly was to secure the privacy of the ballot. But if a voter uses a ballot which comes within the letter of the statute, his vote is not to be rejected because the quality or grade of the paper upon which it is printed differs from that of others, which also come within the letter of the statute, even though the difference be so perceptible as to partially destroy the privacy of the ballot.

Section 23 of the act of March 11th, 1867, 1 R. S. 1876, p. 439, was substantially the same as section 4701, *supra*, being as follows:

"SEC. 23. That all ballots which may be cast at any election hereafter held in this State shall be written or printed on plain white paper, without any distinguishing marks or other embellishments thereon except the name of the candidates and the office for which they are voted for, and in-

spectors of elections shall refuse all ballots offered of any other description: *Provided,* Nothing herein shall disqualify the voter from writing his own name on the back thereof."

In *State, ex rel.,* v. *Adams,* 65 Ind. 393, the ticket claimed to be illegal under the above statute was alleged in the information to have been " printed on very white, thin, and hard paper, which rendered it quite transparent; that, at the head of said ticket, the words ' Republican Ticket' were printed in with very peculiar and unusual type, and in unusual form, and with very black ink, and, by reason thereof, the words ' Republican Ticket' were readily seen and easily read and understood by an inspection of the other side of the ticket; that, in the ordinary way of folding the said ticket, the words ' Republican Ticket,' so printed as aforesaid, were exposed in such manner that the officers of the election, or any other person who might be present and desire to know the ticket which any elector was about to vote, could readily ascertain and know whether a person was voting the Republican, Democratic or National ticket."

This court in that case held the information insufficient, thereby deciding that a ballot was not to be rejected because the paper on which it was printed was so thin as to be quite transparent. If a ticket on paper so thin as to be quite transparent is not illegal, the reason would be equally strong for holding a ticket valid although the paper upon which it was printed should be regarded as unusually thick and heavy.

There is no claim in the case before us that there were any distinguishing marks or other embellishments on the tickets containing the appellee's name that rendered them invalid except the grade or quality of paper on which they were printed. It is not insisted that the paper was not *white,* but it is urged that it was not *plain white paper.* What was plain white paper was a question of fact to be decided upon the evidence. We have examined the evidence carefully, and it tends quite strongly to support the finding of the trial court. Under the rule in such case this court can not weigh the evidence to as-

certain whether the court below decided according to its pre-ponderance. Counsel for the relator insist, however, that the rule does not apply to this case ; that this is a proceeding in chancery, and that in such case it is the duty of the court to examine the evidence and to reverse the judgment if the finding of the trial court is not sustained by the weight of the evidence. It is not necessary in this case to decide whether or not a proceeding by information to test the right to hold an office is purely a chancery cause, requiring a trial by the court without a jury. But see, upon this question, *State, ex rel., v. Reynolds,* 61 Ind. 392. But in chancery cases not tri-able by jury, the ancient practice of having the evidence taken before a master commissioner, and brought before the court upon paper no longer prevails. The court trying the cause now hears the testimony from the mouths of living witnesses, and has every opportunity to test the weight of the evidence that judges trying causes as a jury in the old law court had, and his findings on questions of fact should no more be dis-turbed on appeal than the findings of fact made by a judge upon the trial of a case at law, and so this court has expressly decided. *Pence* v. *Garrison,* 93 Ind. 345 ; *Miller* v. *Evans-ville Nat'l Bank, post,* p. 272.

At the trial the relator offered to prove by one of his wit-nesses, who had testified to the quality of the paper upon which the tickets voted for relator and appellee were printed, that for ten years prior to 1882, he had been in the habit of printing election tickets upon ordinary paper similar to that used in printing the tickets containing the relator's name, and that prior to 1882 paper for printing tickets had not been used similar to that upon which appellee's name was printed. There was no error in rejecting this evidence. The legality of the tickets upon which appellee's name was printed was not to be determined by comparing the paper used for such tickets with that in use in previous years for ballots at elections.

As we have already observed, the law does not prescribe what grade or quality of plain white paper shall be used for

tickets.  If the paper may, in language ordinarily used and understood, be properly designated as plain white paper, it answers the purposes of the law without regard to its grade or quality.  It is obvious, therefore, that proof that plain white paper of a different grade or quality from that used for tickets upon which appellee's name was printed, had previously been in use for the printing of tickets, could have had no material bearing in the present case.

Appellee was permitted to testify at the trial, over the relator's objections, that he had not, directly or indirectly, had any knowledge or information in regard to the character of the tickets upon which his name was printed prior to the day of the election, and that he was not consulted, directly or indirectly, in reference to the preparation of such tickets.

If there was any evidence tending to show that the tickets upon which appellee's name was printed were prepared and used for the fraudulent purposes charged in the information, we think it was competent for the appellee to prove that he was not a party to, nor cognizant of, such fraud.  Such evidence of good faith upon his part might have but little weight, yet we think it was competent to go to the court to be considered with other evidence upon the question of fraud.  If there was no evidence tending to establish fraud, then the admission of the evidence complained of was, at most, an error that was harmless.

We have not deemed it necessary to the decision of this case to consider whether section 4701, *supra*, was mandatory, or merely directory, as to the ticket prescribed for use in elections.  Whether said statute is to be regarded as mandatory or merely directory, we think that the evidence abundantly sustains the finding and judgment of the trial court.

There was no error in overruling relator's motion for a new trial.  Judgment affirmed, at relator's costs.

ELLIOTT, J., did not participate in the decision of this case.
Filed Jan. 3, 1885.