MOORE et al. v. PLOTT. (No. 6107.)

(Court of Civil Appeals of Texas. Austin. Dec. 4, 1918.)

1. APPEAL AND ERROR ☞837(3)—REVIEW—RECORD.

On appeal from an order granting a temporary injunction, ex parte and in chambers, only the record as it existed at the time the writ was granted can be considered.

2. ELECTIONS ☞181—MARKING BALLOTS.

Vernon's Sayles' Ann. Civ. St. 1914, art. 2969, is only directory as far as "writing the name of the candidate for whom a voter desires to vote in the blank column, and in the space provided for such purpose," is concerned, and a vote was not illegal, where the printed name of the candidate was scratched and the name of another written in the space provided for the printed name.

3. ELECTIONS ☞1, 15—RIGHT TO VOTE.

Suffrage is not a natural or inalienable right, yet it is a privilege conferred by the Constitution, and is not to be taken away, except by clear command of law.

4. INJUNCTION ☞118(4)—PLEADING—INADEQUATE REMEDY AT LAW.

Where a petition and affidavit for injunction to restrain the commissioners' court from canvassing election returns and declaring the results stated that the plaintiff desired to file a contest of election against M., and that M. absented himself so that notice thereof could not be served upon him, an injunction should not have been issued, because in failing to negative other than personal modes of serving notice of contest there was no showing that plaintiff did not have an adequate remedy at law.

5. INJUNCTION ☞80—POLITICAL FUNCTIONS—CANVASSING BOARDS.

The commissioners' court, in canvassing and declaring results of elections, is exercising a political and not a judicial power, and the exercise of such power cannot be enjoined.

Appeal from District Court, Falls County; W. A. Patrick, Judge.

Action by C. H. Plott against C. O. Moore and others. From an order granting a temporary injunction, the defendants appeal. Reversed and rendered.

Spivey, Bartlett & Carter, of Marlin, for appellants.

BRADY, J. In this case appellants appealed from an order granting a temporary injunction, made ex parte and in chambers. The injunction restrains appellants, E. M. Dunson, as county judge and ex officio chairman of the commissioners' court of Falls county, and the other members of the commissioners' court of said county, from canvassing the returns, and declaring the result of the last general election as to the office of sheriff of Falls county, until the further orders of the court.

Appellee filed his verified petition in the court below, with certain supporting affidavits attached, alleging that in said election he received 934 votes for sheriff, and that appellant C. O. Moore received 1,454 votes for such office; that appellee was the Democratic nominee for sheriff, and that his was the only name printed upon the Democratic tick-et for that office at said election. Appellee further averred that at least 1,000 of the votes cast, counted, and returned for appellant Moore were absolutely void, because said Moore was not the nominee of the Democratic party, nor of any other political party having a ticket in the said general election, and because the electors who attempted to vote for Moore prepared their ballots by drawing a line through the name of appellee, and writing in the name of C. O. Moore in the space left for appellee on said Democratic ticket, and that they did not write Moore's name in the blank column on the ballot, in the space left for the office of sheriff, as required by law; further, that some of the said electors did write the name of Moore in the blank space on the Republican ticket, the Socialist ticket, the Independent ticket, and at other places on the ballot used at the election.

Appellee averred that the voters were without legal authority to so prepare their ballots, and that each such ballot so cast, counted, and returned was void, because the law required the voters desiring to vote against appellee, and for appellant Moore, to write Moore's name in the blank space provided and left for that purpose upon the official ballots.

Appellee further alleged that appellant Moore did not receive as many as 500 legal votes cast at such election, and that appellee's majority of the legal votes cast for sheriff was at least 500, and that he was entitled to a certificate of election, and prayed therefor.

It is alleged that the office of sheriff in said county has a pecuniary value of $1,000 a year, and that appellee is entitled to the fees and emoluments thereof by virtue of his claimed election to the same.

In his petition appellee alleged his intention to contest the election, and that by law he was required to serve notice upon appellant Moore of his intention to contest such election within 30 days after the return day thereof, and upon information and belief charged that appellant Moore had absented himself from Falls county, his whereabouts being unknown to appellee, with the intention of remaining away an indefinite time, and with the purpose of defeating service of such notice and appellee's right under the law affording the right of contest. Appellee alleged that he had no adequate legal remedy, and prayed for a writ of injunction restraining the county judge and other members of the commissioners' court from canvassing the returns of said election for the office of sheriff, from declaring appellant Moore to be the duly elected sheriff of said county, and from issuing a certificate of election to said Moore, and that upon final hearing the injunction be made perpetual.

As we have stated, there are a number of

supporting affidavits attached to appellee's petition, which show that a large majority of the votes cast for appellant Moore for sheriff were prepared by the voters' having scratched appellee's name from the Democratic ticket and writing Moore's name, either in that column or in other columns on the ballot provided for the tickets of other political parties, and that in but a very small percentage of cases did the voters casting their ballots for Moore write in his name in the blank column on the ballot provided by law for that purpose.

While it may not be a fact of much importance in this case, yet it is worthy of note that the said supporting affidavits show that, as to the voting boxes covered by said affidavits, practically 90 per cent. of the votes cast for appellant Moore were prepared by the voters writing in the name of Moore in the Democratic column, after having scratched appellee's name therefrom.

The trial judge considered appellee's petition, together with his supporting affidavits, ex parte and in chambers, and his fiat thereon and the record reveal that upon such evidence alone he granted the temporary injunction, substantially as prayed for by appellee, and the writ was issued and served accordingly.

[1] In this character of proceeding, we are required to consider the record just as it existed at the time the writ was granted. The case comes to us alone upon appellee's petition, with the supporting affidavits attached, the fiat of the judge entered thereon, and the writ issued under such order. Appellants have filed briefs in this court, but no briefs are upon file for appellee.

In their brief appellants present several assignments of error and propositions, which we will consider. But the fundamental question presented for our decision is whether or not appellee's petition and the affidavits attached showed a good cause of action, and whether, based thereon, the trial court properly granted the temporary injunction. If not, it was fundamental error; and this question calls for a statement and consideration of the statute governing such an election, and a review of the authorities bearing upon the questions arising therefrom.

[2] Appellants make the proposition that the injunction should not have been granted, because the petition shows that appellant Moore received a majority of the votes cast in said election, and that they were counted for him by the managers of the election, and returns accordingly made, and that the petition wholly fails to show that said votes were illegal; that the persons desiring to vote for appellant Moore had the legal right to scratch appellee's name from the ballot, and write in the name of appellant Moore at any proper place for the office of sheriff, either in the ticket of any political party, the name of which appeared on the ballot, or in the blank column provided for that purpose on the right-hand side of the ballot.

The effect of this proposition is to assert that the statute on the subject is directory, and not mandatory. In this connection, it is to be stated that the sole ground of attack upon the votes cast for appellant Moore, contained in appellee's petition, is that such voters did not write in the name of Moore at the proper place on the ballot, to wit, the blank column, and appellee does not allege any fraud or mistake in the election, nor does he question the legal qualification of the electors who so voted for appellant Moore, nor any unfairness in the election, save in the manner in which the votes were prepared which were cast for Moore.

The statute governing this particular matter is article 2969, Vernon's Sayles' Civil Statutes. After directing the form and method of printing the ballots, and the arrangement of the tickets of each political party in parallel columns, this article provides that:

"When a voter desires to vote a ticket straight, he shall run a pencil or pen through all other tickets on the official ballot, making a distinct marked line through such ticket not intended to be voted; and when he shall desire to vote a mixed ticket, he shall do so by running a line through the names of such candidates as he shall desire to vote against in the ticket he is voting, *and by writing the name of the candidate for whom he desires to vote in the blank column and in the space provided for such office;* same to be written with black ink or pencil, unless the names of the candidates for which he desires to vote appear on the ballot, in which event he shall leave the same not scratched." (Italics ours.)

It will be seen that literally this statute requires a voter, in a case like this, where he desires to vote against a candidate whose name appears upon the official ballot, and for another whose name does not appear thereon, to write the name of the candidate for whom he wishes to vote in the blank column and in the space provided for such purpose. If this statute be mandatory, it is clear that most of the votes cast for appellant Moore under the allegations of appellee's petition were illegal and void, and that, so far as this question alone is concerned, it was not error to grant appellee his temporary injunction. On the other hand, if the statute is merely directory, then the failure to observe its directions would constitute, at most, an irregularity, which under the authorities would not avoid the election, or render the votes so cast illegal, and, independently of any other question, the action of the trial court in granting the injunction would be fundamental and reversible error. This is the main question in the case, and its importance warrants, if it does not require, at least a brief review of the decisions and authorities controlling the question.

Mr. McCrary, an eminent writer upon the subject of elections states the rule laid down by the weight of authority as follows:

"The language of the statute to be construed must be consulted and followed. If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular act in question goes to the merits, or affects the result of the election, or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the Legislature. But if, as in most cases, that statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election." McCrary on Elections (4th Ed.) p. 169.

"Unless a fair consideration of the statute shows that the Legislature intended compliance with the provisions in relation to the manner to be essential to the validity of the proceedings, it is to be regarded as directory merely." Id. p. 170.

"Those provisions of a statute which affect the time and place of the election, and the legal qualification of the electors, are generally of the substance of the election, while those touching the recording and return of the legal votes received, and the mode and manner of conducting the mere details of the election, are directory. The principle is that irregularities which do not tend to affect results are not to defeat the will of the majority; the will of the majority is to be respected, even when irregularly expressed." Id. p. 172.

"The view here expressed is fully confirmed by the decision of the Supreme Court of Michigan in People v. Bates. In that case it was held that an elector is not to be deprived of his vote, either by the mistake or fraud of an inspector in depositing it in the wrong box, if the intention of the voter can be ascertained with reasonable certainty. Nor should ballots be rejected because of being put in the wrong box by the honest mistake of the voters themselves. In that case a state and city election were both held at the same time and place, under the charge of the same officers, and seven ballots for city officers were found at the closing of the poll in the state box. The circumstances of the case made it, in the opinion of the court, reasonably certain that these ballots were in good faith put in by electors, and they were accordingly counted." Id. p. 176.

The case of State ex rel. Millican v. Phillips, 63 Tex. 393, upon a similar question, states the rule as follows:

"The decisions tend rather to restrict the exceptions which exclude the ballot, rather than to extend them; to admit the ballot if the spirit and intention of the law is not violated, although a literal construction would vitiate it. Druliner v. State, 29 Ind. 308; Stanley v. Manly, 35 Ind. 275; Kirk v. Rhoads, 46 Cal. 398."

In the well-reasoned case of Fowler v. State, 68 Tex. 30, 3 S. W. 255, Chief Justice Willie, in a suit involving irregularities in the methods of voting at an election, and in the manner of making returns, used this language:

"The statute does not say that a failure to pursue the course pointed out by it in these respects shall vitiate the election, nor is there anything in the nature of these provisions which requires us to give them that effect. The object of every popular election for officers is to ascertain the will of the people as to what persons shall serve them as such in the various positions to be filled. A free, fair, and full expression of the public will is sought, and cer-tain means are prescribed by law as the most certain to bring about the desired result. Some of these, from their very nature, or from the manner in which they are prescribed, are deemed absolutely essential to the accomplishment of the desired result. Among these may be named the requirement that the voting shall be by ballot; that it shall take place on a certain day, and within certain precincts, etc. These are prescribed to insure perfect freedom of choice to the citizen, to serve his convenience in getting to the polls, and to bring out a full vote at the election.

"Then there are other requirements, such as those which have been neglected in this case, that are merely formal in their character. The law deems that it is proper that they should be pursued in order to prevent frauds in the election, and tampering with the votes and returns. If strictly followed, they furnish the best evidence that the election has been fairly conducted, and the burden of proof to show that it was not, either wholly or in part, rests upon the party attacking the returns. But these requirements are always treated as directory, unless the law, either expressly or in effect, makes them essential to the validity of the election. Electors must not be deprived of their votes on account of any technical objection to the manner in which the election has been held, or for any misconduct on the part of its presiding officers, if these have not affected the true result of the election. Cooley's Constitutional Limitations, 617, 618; Prince v. Skillin, 71 Maine, 361 [36 Am. Rep. 325]. This would be to deprive the citizen of a great constitutional privilege for a mere informality; to place it within the power of a few persons to defeat the right of suffrage altogether. The very means provided to insure a fair and proper election might become an instrument of fraud and dishonesty. Hence, all such irregularities of the officers in the conduct and return of the election as have not prevented the electors from a free and fair exercise of the right of suffrage, and from having their votes fairly estimated for the candidate of their choice, and which the law has not declared should set aside their ballots, must be treated as informalities not vitiating the election. This principle is to be taken with the qualification that it must be made to appear that the neglect or misconduct of the officers has not, in the particular case, prevented an honest and fair election."

Associate Justice Brown, speaking for the Supreme Court in the case of State v. Conner, 86 Tex. at page 143, 23 S. W. at page 1107, quoted with approval the following language:

"A clause is directory when the provision contains mere matter of direction and no more, but not so when they are followed by words of positive prohibition."

In Kulp v. Railey, 99 Tex. at page 316, 89 S. W. 959, Associate Justice Williams said:

"After being defeated at a free and fair election by the votes of the opposing party appellant's only complaint is that the candidate for whom those votes were cast was not regularly nominated by that party before the election. It would seem that the election itself ought to be a sufficient answer to this position. Certainly success in maintaining it would be a curious result of an effort on the part of the Legislature to promote fairer elections. To justify a court in thus rejecting the ballots of voters invested by the Constitution with the elective franchise who voted fairly and in good faith to fill an office which the Constitution required to be filled at that time and by such voters, nothing will suffice short of a clear legislative command. This is the principle uniformly applied in determining such questions."

Further on in the opinion he quotes with approval from the case of Davis v. State, 75 Tex. 424, 12 S. W. 957, the following language:

"The main design of all election laws is, or should be, to secure a fair expression of the popular will in the speediest and most convenient manner, 'and we think a failure to comply with provisions not essential to attain that object should not avoid the election, in the absence of language clearly showing that such was the legislative intent."

In Clark v. Hardison, 40 Tex. Civ. App. 611, 90 S. W. 342, Chief Justice Rainey, announcing the decision of the Court of Civil Appeals for the Fifth District, said:

"Election laws are enacted for the purpose of ascertaining the will of the electors, and the failure to observe the directory provisions of the law will not nullify an election if it shows a fair and honest expression of the electors' will. If, however, by the failure to observe such provisions there is no fair expression of the voters' will, or if any fraud is shown to exist in conducting the election, then the failure of such observance becomes material. There is no charge of fraud or that the result of the election in this case does not reflect the honest sentiment and convictions of those voting at said election."

See, also, Savage v. Umphries, 118 S. W. 893; Short v. Gouger, 130 S. W. 267; Altgelt v. Callaghan, 144 S. W. 1166.

Citation of authorities to the same effect might be multiplied ad infinitum, but we think the above cases and authorities are sufficient to clearly indicate the true rule in this state, as well as elsewhere, upon the question and principles which must control this case. We have applied these rules to the statute under consideration, and have reached the conclusion that the statute, in so far as it affects the subject-matter of this suit, and the validity of the votes cast for the appellant Moore, at least as against the attack made by appellee, is directory, and that the failure of the voters to observe the directions of the statute will not invalidate their votes, nor defeat their will as expressed.

[3] Suffrage is not a natural or inalienable right, yet it is a privilege conferred by the Constitution, and is not to be taken away, except by clear command of law. Election laws are generally enacted to promote the free and fair expression of the popular will, and to insure the purity and honesty of the ballot. Such is the prime object of our election statutes, and the provisions of article 2969, in question, were manifestly included for the benefit and convenience of the voters, and the failure to observe the same is not declared by the statute to invalidate either the election or the vote cast.

An example of a mandatory provision in election laws, under the principles announced, is found in another section of the very same law we are considering, being article 3097, Vernon's Sayles' Civil Statutes. Said article prohibits any official ballot from containing any symbol or device, or any printed matter, except that which is required by law, and

206 S.W.—61

provides that no ballot cast in violation of this article shall be counted for any candidate. It is not doubted that the statutory provision just quoted is of an imperative nature, because by its very terms it prescribes the penalty and consequences that shall flow from a failure to observe it. No such legislative intention is to be found in article 2969, which is invoked in this case. The distinction between the two classes of regulations is, to our minds, manifest.

In this case we think it clear, from the averments of appellee's petition, that it was the intention of the voters who cast the votes assailed to choose the appellant C. O. Moore as sheriff of Falls county, rather than the appellee, whose name they scratched. The manner in which they expressed this choice, although not literally following the terms of the statute, was in substantial compliance therewith.

Taking the averments of appellee's petition as true, as we must, there is at most a charge of irregularity in the method of expressing the will of the majority, with no allegations of fraud or collusion. It appearing that an honest and fair expression of the electors' choice was had, we are compelled, under the principles laid down in the above authorities, to hold that noncompliance with the literal directions of the statute would not operate to render their votes illegal or void. Therefore, as a matter of fundamental error, and also as sustaining appellants' fourth assignment of error, we decide that the injunction was erroneously granted by the trial court, and that such error requires the reversal of this case.

[4] Another ground upon which we think this case must be reversed is presented by appellants' first assignment of error, which is as follows:

"The temporary injunction was erroneously granted, because the sole ground therefor was that appellee, Plott, desired to file a contest of an election against appellant Moore, and that Moore absented and secreted himself, so that notice thereof could not be served upon him, the petition not negativing any of the other modes pointed out by the statute by which appellee could have procured service of such notice"

—and by appellants' third assignment of error, which is that:

"The injunction should not have been granted, because the petition wholly fails to negative that the plaintiff has an adequate remedy at law."

It is true that appellee in his petition made the general allegation that he was without any adequate legal remedy to preserve and protect his vested rights to the said office of sheriff; but this must be taken in connection with all the other averments of the bill. If the petition as a whole shows that it is without equity, and that in fact the appellee had an adequate legal remedy, the injunction should have been denied. As has been before stated, appellee alleged his intention to con-

test the election, and averred as his reason for resorting to the equitable remedy of injunction that appellant Moore had secreted himself and concealed his whereabouts in order to evade service of the statutory notice of appellee's intention to contest the election. He did not, however, allege any collusion between appellant Moore and the commissioners' court, nor any fraud, nor any legal wrong that would result from canvassing the votes and declaring the result of the election, and in awarding a certificate of election to appellant Moore, save and except the alleged irregularities in the preparation of the ballots cast in favor of Moore. Nor did appellee negative that appellant Moore had an agent or attorney in Falls county, or elsewhere, upon whom service might be had; nor that said appellant had a usual place of abode or business at which notice of intention to contest the election might be left with some person over the age of 16 years.

Article 3053, Vernon's Sayles' Civil Statutes, provides the modes of serving a notice of contest, which may be either by delivering same to the contestee in person, if he can be found in the county, or, if he cannot be found, then upon his agent or attorneys, or by leaving the same with some person over the age of 16 years at the usual place of abode or business of such contestee. It is clear that appellee's petition did not negative any of the several modes of service, except that appellant Moore was not to be found within the county.

Our statute makes special provision for a contest of such an election, to which legal remedy appellee averred he intended to resort. If appellant Moore was illegally elected, or illegally declared elected, this statute affords an adequate legal remedy; or if appellant Moore should intrude into the office to which appellee is entitled, quo warranto under either statute would also lie.

The reasons assigned by appellee for asking an injunction, because of the alleged concealment of his whereabouts by appellant Moore, are wholly inadequate to justify a resort to equitable relief. Therefore we are of the opinion that appellee had an adequate remedy or remedies at law, and that no sufficient grounds were alleged to enable him to invoke the equitable powers of the court, and for this reason, also, the case will be reversed.

[5] There is still another reason of a fundamental character, presented by appellants' second assignment of error, why we think the injunction was erroneously granted in this case. The record shows that the injunction was awarded to restrain the commissioners' court from canvassing the returns and declaring the result of an election for the office of sheriff. It now seems to be settled doctrine in this state that the exercise of such power is not judicial, but is political, and that a court is without jurisdiction to en-

join the political function of canvassing returns and declaring the result of an election. We do not deem it necessary to review the authorities sustaining this proposition, but content ourselves with referring to the following cases, and to quote briefly from a recent decision by the Supreme Court: City of Dallas v. Dallas Consolidated Ry. Co., 105 Tex. 337, 148 S. W. 292; Watson v. Cochran, Co. Judge, 171 S. W. 1067; Fuller v. McHaney, Co. Judge, 192 S. W. 1159; Lyle v. Longan, 162 S. W. 1156; Townsen v. Mersfelder, 49 Tex. Civ. App. 289, 109 S. W. 420; Robinson v. Wingate, Co. Judge, 36 Tex. Civ. App. 65, 80 S. W. 1068; same case on writ of error, 98 Tex. 267, 83 S. W. 182.

In the case first cited, the question before the court was the power of the district court to grant an injunction restraining the mayor and board of commissioners of the city of Dallas from canvassing the returns and declaring the result of an election upon an ordinance submitted to the voters under the initiative principle embodied in the city charter. It was held that the district court erred in granting the injunction, on the ground that, under the facts alleged, the canvassing of the returns and declaring the result of the election involved a political question, not cognizable by a court of equity. This conclusion was reached, notwithstanding the complaint alleged large pecuniary interests and property rights, which would be injuriously affected, should the ordinance become effective upon the declaration of the result of the election. We think it is proper to quote the following from the opinion of Justice Phillips:

"As elections are essentially the exercise of political power, it cannot be doubted that all action properly related thereto and necessary to their completion is from the same source, and is but the expression of the same power. The canvassing of the returns of an election is necessary to the determination of the result; it is an integral part of the election itself, without which the election is a vain proceeding, and as such inheres as a right sanctioned by the political power, as absolute as the right of the electorate to vote or for the election to be held. When it is declared that because of their relation to the political power of the government, elections are beyond the control of the judicial power, it is meant that the whole election, including every step and proceeding necessary to its completion, is exempt from judicial interference; and the canvassing of the returns of an election must therefore be held as within the rule and justly entitled to its protection."

The other authorities above cited are to the same effect, and seem to be decisive of the question, which is no longer an open one in this state. Therefore we think it was fundamental error for the court below to issue the injunction restraining the members of the commissioners' court from performing the ministerial duty imposed upon them by law to canvass the returns and declare the result of the election in question.

For all of the above reasons, the order and decree of the court below will be reversed, and judgment here rendered for appel-

lants, dissolving, setting aside, and holding for naught the temporary injunction against appellants.

Reversed and rendered.