

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable G. A. Neal
County Auditor
Ellis County
Waxahachie, Texas

Dear Sir:

Opinion No. O-2873

Re: Whether or not electors may
scratch names of Democratic
nominee for office of Commis-
sioner of Agriculture and
write in the name of another,
his opponent in the Demo-
cratic primaries.

This will acknowledge receipt of your letter of October 30, 1940,
requesting the opinion of this Department upon the above stated
matter. Specifically your questions are as follows:

"1. Is it legal to scratch the name of J. E. McDonald,
and write in the name of his opponent, Bill Corry?

"2. If Bill Corry should receive a majority of the
votes cast in the general election on Tuesday,
November 5, 1940, would he be duly elected as the
Commissioner of Agriculture?"

Article 2981 of the Revised Civil Statutes of Texas, 1925,
reads as follows:

"When a voter desires to vote a ticket straight, he shall
run a pencil or pen through all other tickets on the
official ballot, making a distinct marked line through
such ticket not intended to be voted; and when he shall
desire to vote a mixed ticket he shall do so by running
a fine line through the names of such candidates as he
shall desire to vote against in the ticket he is voting,
and by writing the name of the candidate for whom he
desires to vote in the blank column and in the space
provided for such office; same to be written with black
ink or pencil, unless the names of the candidates for
which he desires to vote appear on the ballot, in which
event he shall leave the same not scratched." (Under
scoring ours)

Note that this article specifically authorizes a voter when he desires to vote a mixed ticket to do so by running a line through the names of such candidates he desires to vote against and write in the name of the candidate for whom he desires to vote in the blank column in the space provided for such office.

The writer in 9 Ruling Case Law at p. 1054, in speaking of statutes like Article 2951 said:

> "Another rule followed is to leave blank spaces upon the ballot so that a voter who may not be satisfied with any of the candidates whose names appear printed thereon may write in the names of his choice.  This rule is generally adopted in statutes providing for an official ballot; and unless such statutes are so explicit as to prevent it they will be so construed by the courts.  It is manifest that a failure to afford this right is a serious interference with the freedom of the exercise of the right of franchise, and while the legislature may limit the number of names to be printed upon the official ballot to those regularly nominated or running as independents, the voter must be left free to vote for candidates of his own choice by giving him the means and a reasonable oppportunity to write in or insert the names of such candidates."  See also 20 C.J. 160.

Again, it is stated in 18 Am. Jur. p. 307:

> "The majority view, however, seems to be that a statute prohibiting the writing in of names of candidates upon the ballot is unconstitutional, and in most states the insertion of names of candidates upon the ballot is permitted."

The identical question you raised in your letter has been before the courts in this State.  In Cunningham v. McDermett (CCA 1925) 277 S.W. 218, writ dismissed, it appeared that Cunningham and McDermett were both candidates for the Democratic nomination to the office of County and District Clerk of Reagan County, Texas.  Cunningham was successful, and his name appeared on the ballot at the general election as the Democratic nominee.  At the general election McDermett and twenty-five others who had participated in the Democratic primary scratched Cunningham's name and wrote in the name of McDermett.  Only 175 votes were cast, 78 for Cunningham and 97 for McDermett, who was declared elected.  Had the ones who participated in the Democratic primary either voted for Cunningham or refrained from voting, Cunningham would have been elected.  The court held McDermett duly elected and declared:

> "It cannot be said that because a candidate's name did not

Honorable G. A. Neal, Page 3, O-2873

appear on the official ballot that therefore he could
not be legally elected, if he was otherwise not
ineligible to hold the office to which he aspired,
for to so hold would be, in effect, to say that a citizen
of this state who aspired to office must either help
pay the expenses of some party primary or must, within
30 days after primary election day, deliver to the
secretary of state on application signed by the required
percentage of qualified voters in his district who had
not participated in any party primary.

"The Constitution has laid down rules in regard to the
ineligibility of persons to hold office, and the legislature,
in article 3082, Vernon's Ann. Civ. St. Supp. 1922, has
provided that all persons are ineligible to any state,
county, precinct, or municipal office in the state unless
they are eligible to hold office under the Constitution,
and though conviction of high crimes makes a person
ineligible, according to the Constitution, we find nowhere
any law which disqualifies a person from holding office
on account of the breach of a purely moral obligation such
as the primary pledge has been held to be by our Supreme
Court in Westerman v. Mims, supra. Therefore, we must
disagree with appellant on his proposition that, because
McDermett had theretofore participated in the Democratic
primary, and had filed a contest before the county
Democratic executive committee, he was legally disqualified
to be elected to the office of county and district clerk.

"Appellant also contends that the 25 votes cast by
McDermett's friends, who had voted in the primary, were
illegal and fraudulent, because in so casting their votes
for McDermett and against Cunningham they violated the
primary pledge to support Cunningham, the Democratic
nominee, and that they should not be counted.

" . . .

"We are of the opinion that the 25 voters aforesaid came
within the qualifications specified in the Constitution,
and that, they being qualified voters, ballots cast by
them would be legal ballots and should be counted unless
they were mutilated to such an extent, as to render their
being counted impossible, or otherwise failed to conform
to the requirements of the statutes.

"If there is anything in the declarations in our Constitu-
tion that 'all political power is inherent in the people,
and all free governments are founded on their authority,
and instituted for their benefit', and there should be
none who would gainsay it, how could any court, which has

> any respect for established law and order, nullify the
> will of the people of a subdivision of this state as
> expressed by their votes; and we are of the opinion that
> for this, or any other court, to hold that the will of
> the majority as to the selection of their officers
> should be set aside and held for naught would be violating
> both the spirit the letter of our Constitution.

> "Believing that the Legislature, in enacting article 3096,
> merely intended it to carry out a practice which had been
> in vogue by political parties of requiring a test in party
> primaries, and that they had no intention of attempting
> to limit the right of suffrage in general elections, we
> hold that the judgment rendered by the trial court was
> correct."

In Moore v. Plott (CCA 1918) 206 S.W. 958, it appeared that
appellee Plott was the Democratic nominee for the office of
sheriff and his was the only name appearing upon the official
ballot at the general election. Appellant Moore, however,
conducted a write-in campaign at said general election and
received 1,454 votes to 934 for appellee. Appellee contended
that at least 1,000 of the votes cast for Moore were void
"because Moore was not the nominee of the Democratic party, or
of any other political party having a ticket in the said
general election; and because the electors who had attempted
to vote for Moore prepared their ballots by drawing a line
through the name of appellee, and writing in the name of C. O.
Moore, in the space left by appellee on said Democratic ticket,
and that they did not write Moore's name in the blank column
on the ballot, in the space left for the office of Sheriff, as
required by law; further, that some of the said electors did
write the name of Moore in the blank space on the Republican
ticket, the Socialist ticket, the Independent ticket, and other
places on the ballot used at the election." The court held
Moore to be duly elected, and the votes cast for him legal
although not strictly in accordance with the letter of the
statute, (Art. 2969, Vernon's Sayles Civil Statutes-- now
Article 2981, Vernon's Annotated Civil Statutes) and said:

> "It will be seen that literally this statute requires a
> voter, in a case like this, where he desires to vote
> against a candidate whose name appears upon the official
> ballot, and for another whose name does not appear thereon,
> to write the name of the candidate for whom he wishes to
> vote in the blank column and in the space provided for such
> purpose. If this statute be mandatory, it is clear that
> most of the votes cast for appellant Moore under the
> allegations of appellee's petition were illegal and void,
> and that, so far as this question alone is concerned, it
> was not error to grant appellee his temporary injunction.
> On the other hand, if the statute is merely directory,

then the failure to observe its directions would constitute, at most, an irregularity, which under the authorities would not avoid the election, or render the votes so cast illegal, and, independently of any other question, the action of the trial court in granting the injunction would be fundamental and reversible error.

". . .

"In this case we think it clear, from the averments of appellee's petition, that it was the intention of the voters who cast the votes assailed to choose the appellant C. O. Moore as sheriff of Falls county, rather than the appellee, whose name they scratched. The manner in which they expressed this choice, although not literally following the terms of the statute, was in substantial compliance therewith."

Consequently, it is our considered opinion, and you are so advised that electors in the forthcoming general election may in accordance with Article 2981 legally scratch the name of the Democratic nominee for the office of Commissioner of Agriculture and write in the name of another in the blank space provided therefor on the ballot. Furthermore, in accordance with the case of Moore v. Plott, supra, a ballot may be properly counted whereon an elector has stricken the Democratic nominee and written in the name of another candidate in the same space.

In answer to your second question, it is our opinion and you are so advised that one whose name is written-in upon the official ballot in the forthcoming general election, and who receives a majority of the votes cast for the office of Commissioner of Agriculture, if qualified to hold the office, will be the duly elected Commissioner of Agriculture.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By     s/ James D. Smullen

James D. Smullen
Assistant

JDS:eaw/cge

GERALD C. MANN

Approved Opinion Committee
By BWB, Chairman